HENRY SACHLEBEN *et al.*, Respondents, v. DANIEL R. WOLFE *et al.*, Appellants.

### St. Louis Court of Appeals, January 29, 1895.

1. **Contracts, Construction of.** In the interpretation of contracts, the words used must be taken in their plain, ordinary and usual sense; and, where they are free from ambiguity or uncertainty, no room is left for construction.

2. ———. However capricious may be the intention which is clearly and unequivocally expressed, every court is bound by it unless it be plainly controlled by other parts of the instrument.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED (*Biggs, J., dissenting*).

*Lee & McKeighan* and *J. M. Holmes* for appellants.

*H. A. Haeussler* for respondents.

BOND, J.—This is a suit for $10,000 for royalty alleged to be due the plaintiffs, who are parties of the first part, in the following contract:

"*This agreement*, made and entered into this twenty-third day of May, 1887, by and between Henry Sachleben and Louis J. Crecelius, of the city of St. Louis, Missouri, parties of the first part, and Daniel R. Wolfe, Charles S. Hale and Charles F. Heintze and their associates, of the same place, or such company as they may hereafter organize, parties of the second part, *witnesseth* as follows:

"That said parties of the first part, who are now the owners of United States letters patent, number 350,413, for a barbed wire machine, do hereby agree to transfer and do hereby transfer and convey unto the said parties of the second part, or such company as they may hereafter organize, the sole and exclusive right to manufacture, sell and use machines constructed under and in conformity with the principles contained in said letters patent, and to sell the product made by said machines, upon condition, however, that said parties of the second part will execute and deliver certain negotiable promissory notes to said parties of the first part as follows:

"Two notes to be given by Daniel R. Wolfe for the sum of $2,500 each, of even date herewith, one payable six months and one in nine months after date to the order of Louis J. Crecelius and Henry Sachleben, without interest.

"Two notes to be given by Charles S. Hale for the sum of $2,500 each, of even date herewith, one payable in six months and one in nine months after date to order of L. J. Crecelius, without interest.

"Two notes to be given by Charles F. Heintze for the sum of $2,500 each, of even date herewith, one payable in six months and one in nine months after date to order of Henry Sachleben, without interest; and on the further condition that the said parties of the second part, their successors and assigns, will during the terms of the five years from this date pay to the parties of the first part, in addition to the payment of the notes aforesaid, a royalty of $85,000, which amount is guaranteed to be paid by the parties of the second part. Said royalty shall be at the rate of ten cents on each hundred pounds of barbed wire manufactured and sold by said parties of the second part,

their assigns or the company aforesaid, or those whom they may license or authorize to manufacture under or by authority of said letters patent, such royalty to be payable quarterly on the tenth days of September, December, March and June, following the maturity of the above notes.

"Moreover, if during said period of five years, said parties of the second part shall have paid this royalty in full in addition to the payment of said notes, then the parties of the first part or their assigns, as the owners of said letters patent, shall assign, transfer and convey unto said parties of the second part, their assigns or the company by them contemplated and above referred to, a full and perfect title thereunder and all subsequent improvements made or secured therein.

"The parties of the first part do further agree that, if any litigation shall be brought against the parties of the second part, their assigns or the contemplated company aforesaid, or their vendees, or affecting the right of said parties of the second part, their assigns or the company aforesaid, or those whom they may hereafter authorize under or by authority of said letters patent to manufacture or sell patented article described in said letters patent, that the expenses of the litigation shall be paid off the royalty due as aforesaid unto the parties of the first part, to the extent of $10,000, and that the control of such litigation shall be with the parties of the second part, their assigns or the company aforesaid, and the parties of the first part to the full extent of their ability to co-operate with the parties of the second part and said company, and to assist them in all such litigation, except pecuniarily.

"It is further agreed that, in the event of litigation as aforesaid, the parties of the second part, their

assigns or the company aforesaid, may retain out of the royalty aforementioned the sum of $5,000 per year during the term of two years, in the event said litigation shall continue so long, to be held by said parties of the second part, or said company, as security against any unascertained liability resulting from such litigation, and at the end of such litigation the amount so by said parties held as security, less the expenses and costs of defending and finally settling such litigation, shall be paid unto the parties of the first part in the manner and proportion herein above provided. And said parties of the second part do covenant and agree that they will, on or before the twenty-third day of October, 1887, cause to be built, placed and put in operation not less than twenty machines described in said letters patent, and that they, their assigns or the company aforesaid, shall run the same to their full capacity unless prevented by legal process or other unavoidable circumstances.

"In the event the amount of royalty as above provided shall not be paid respectively to the parties of the first part as herein above provided, or in case of a failure by the parties of the second part to comply with any provision of this contract during five years from this date, then whatever amounts of deficit there may be in making such payments in full shall be made good and paid at once by the parties of the second part to the parties of the first part, according to the terms of this agreement; or the parties of the second part may, at their election, forfeit the amounts already paid as royalty unto the parties of the first part, which shall be considered and is hereby agreed to be liquidated damages for breach of this contract.

"*In witness whereof*, this agreement is executed in triplicate, and the parties of the first part and second

part have hereunto set their hands and seals the day and year first above written.

"HENRY SACHLEBEN,      [SEAL]
"L. J. CRECELIUS,      [SEAL]
      "Parties of the first part.
"DANIEL R. WOLFE,      [SEAL]
"CHARLES S. HALE,      [SEAL]
"C. F. HEINTZE,      [SEAL]
      "Parties of the second part."

One of the defenses made in the answer is that on February 1, 1889, according to the terms of said contract, and within the time limited therein, defendants duly terminated said contract and abandoned all rights thereunder by notice to plaintiffs to that effect; that plaintiffs accepted said surrender; that defendants thereby forfeited all royalties theretofore paid, and were absolved from further liability under said contract according to its terms. On the trial it was admitted by respondents that the royalty on the wire manufactured up to February 1, 1889, was $5,824. It also appeared from a subsequent agreement of plaintiffs that they had assigned to one of the defendants a one third interest in all royalties accruing under this contract. There was also evidence tending to show that defendants paid, between January and December, inclusive, of 1888, various expenses of litigation provided for in the contract in suit, aggregating $4,530.30; also $3,486.25 in cost and compromise of litigation affecting the patent mentioned in the contract; and that they further paid considerable amounts to plaintiff Crecelius, who agreed that such payments should be received as part of the royalty due plaintiffs. Defendants sent their letter of cancellation and abandonment of the contract to plaintiffs on February 1, 1889, and there was evidence showing that plaintiffs acquiesced in this action of defendant. The trial judge, sitting as a jury,

found a balance due plaintiffs of $1,019.06. From a judgment rendered in accordance with this finding defendants appealed to this court.

It is insisted by appellants that by the terms of the contract in suit, as applied to the conceded facts in this record, there could be no recovery against them. To sustain this position appellants say that the letter purporting to terminate the contract in suit, which they sent to respondents on February 1, 1889, was an election rightfully exercised by appellants under the terms of said contract, whereby they were released from any liability for royalties provided for in said contract which had not been already paid when the contract was thus abandoned. The sending of the letter by appellants, and the subsequent assertion of full ownership on the part of respondents to the property thus surrendered, are conceded facts. The clause of the contract cited by appellants as their authority for such action is, to wit:

"In the event the amount of royalty as above provided shall not be paid respectively to the parties of the first part, as herein above provided, or in case of a failure by the parties of the second part to comply with any provisions of this contract during five years from date, then whatever amounts of deficit there may be in making such payments in full shall be made good and paid at once by the parties of the second part to the parties of the first part, according to the terms of this agreement; or the parties of the second part may, at their election, forfeit the amounts already paid as royalty unto the parties of the first part, which shall be considered and is hereby agreed to be liquidated damages for breach of this contract."

The question for decision is whether under the provisions of the entire contract appellants were war-

ranted in electing, according to the terms of the fore-
going clause, to abandon the contract by forfeiting
"the amounts already paid as liquidated damages" for
this breach.   The contract, *supra,* contains the whole
engagement of the parties.   It is not pretended that it
is susceptible of parol explanation; nor was any such
evidence offered on the trial.   It is sought to be en-
forced as expressing the true intent of the parties.  The
action is not for the reformation, but for the breach of
the contract as written.

In cases calling for the construction of a writing by
a reference to the whole of its provisions it would be dif-
ficult to find a more succinct and comprehensive defi-
nition of the rule to be applied, than the one given by
Vice Chancellor Leach, who says: "In the construction
of all instruments it is the duty of the court not to confine
itself to the force of a particular expression, but to collect
the intention from the whole instrument taken together.
But a court is not authorized to deviate from the force
of a particular expression, unless it finds in other parts
of the instrument expressions which manifest that the
author of the instrument could not have the intention
which the literal force of a particular expression would
impute to him.   However capricious may be the inten-
tion which is clearly and unequivocally expressed, every
court is bound by it, unless it be plainly controlled by
other parts of the instrument."   *Hume v. Rundell,* 2 S.
& S. 177.   To the same effect are *County of Johnson v.
Wood,* 84 Mo. *loc. cit.* 507, and *Renshaw v. Ins. Co.,* 103
Mo. *loc. cit.* 604.   Applying this canon of construction
to the foregoing clause, considered in the light of all
the provisions of the contract in which it is embraced,
there is plainly no tangible ground on which to base its
rejection as a part of the entire agreement.   No clause
or paragraph of the whole contract is repugnant to the
one under consideration, nor is there anything in the

contract as an entirety which demonstrates that the authors of that instrument could not have the intention, which the literal force of the terms in the particular clause would impute to them.   Indeed, it is not contended by the counsel for respondents that this clause of the contract is so at variance with other parts, that it should be wholly excluded.   It is only insisted that the following words contained in the clause in question, to wit: "Parties of the second part may, at their election, forfeit the amounts already paid as royalty unto the parties of the first part, which shall be considered and is hereby agreed to be liquidated damages for the breach of this contract," should by some substitution of words be construed to condition the right of said parties of the second part to end the contract upon a payment of the amounts of royalty then due, or payable. There is no principle upon which this theory can be sustained.   As is said by Mr. Greenleaf: "The writing, it is true, may be read by the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of the parties; but, as they have constituted the writing to be the only outward and visible expression of their meaning, *no other words* are to be added to it or substituted in its stead.   The duty of the court in such cases is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words express, but what is the meaning of the words they have used." 1 Greenleaf on Evidence, sec. 277; affirmed in *Koehring v. Muemminghoff*, 61 Mo. *loc. cit.* 407.

The meaning of the word "paid" can not be a matter of doubt, and is essentially different from that of the words payable, earned or due. Unless, however, the former can be expunged and one of the latter inserted in its stead in the contract, there is not a shadow of ground to support the construction of the

contract contended for by respondents. In the interpretation of contracts, the words used must be taken in their plain, ordinary and usual sense, and where, as in the present case, they are free from any ambiguity or uncertainty, there is no room left for construction. As is said by the supreme court: "Rules of construction may be invoked for the purpose of ascertaining the intention; but when there is no uncertainty or ambiguity in the language used, no place will be left for the application of technical rules." *Carr v. Lackland*, 112 Mo. *loc. cit.* 460.

To accord the ·contract in suit the construction claimed by respondents would be tantamount to making an agreement for the parties contrary to the plain and unambiguous import of the terms employed by them. This we have no power to do. The principle, that capable persons are entitled to the fullest liberty of contract within legal limits, is jealously guarded by the law. Our conclusion, under the foregoing clause of the contract in suit and the conceded evidence in this case, is that appellants had a right to withdraw from the contract in suit by forfeiting all payments of royalty theretofore made by them, whether directly to respondents or for expenses of litigation provided for in the contract, without incurring any further liability on account of unpaid royalties. For these reasons the trial judge erred in not finding a verdict and rendering judgment in favor of appellants, and the judgment rendered by him in favor of respondents will be reversed.

Judge ROMBAUER concurs, Judge BIGGS dissents.