CONSERVATIVE REALTY COMPANY, Appellant, v. ST. LOUIS BREWING ASSOCIATION, Respondent.

St. Louis Court of Appeals, October 20, 1908.

1. LANDLORD AND TENANT: Interpretation of Lease. The intention of the parties to a lease regarding the purpose for which the premises are leased should have great influence in interpreting any cause of the lease, and where premises were leased for the purpose of conducting a saloon in them, such purpose should have its influence in construing a clause of the lease providing it should become void in case of failure on the part of the lessee to obtain a license.

2. ——: ——: ——: Saloon License. Premises were leased for a term of years for the purpose of running a saloon and the lease provided: "should said saloon license be not secured on said premises in said block, then this lease is null and void on ninety days' notice from said lessee." No saloon license is mentioned elsewhere in the lease and the lessee had already been assured that a license would be granted for the first six months. Held, the stipulation should be construed so that if at any time during the term of the lease, the lessee should fail to procure a saloon license, he could avoid the lease on ninety days' notice.

3. DRAMSHOPS: Corporation: License. It is not unlawful for a brewing corporation to lease premises for the purpose of hav-

ing its beer sold in them. Where a brewing corporation took a lease on premises, which lease showed that the premises were let for the purpose of conducting a saloon, and provided that the lease could be terminated on the failure of the lessee to obtain a license, the failure of the third person who was selling the lessee's beer to obtain a license for a saloon upon the premises, was sufficient to warrant a termination of the lease, although the corporation itself could not obtain a dramshop license.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields,* Judge.

AFFIRMED.

*Kincaly & Kincaly* for appellant.

(1) The provisions in the lease as to the effect of the failure to procure the saloon license referred only to the first license, the one that was being sought when the lease was signed. The court therefore erred in refusing plaintiff's instructions and giving defendant's. Construction Co. v. Tie Co., 185 Mo. 25; 17 Am. & Eng. Ency. of Law (2 Ed.), p. 2; Hanna v. Land Co., 126 Mo. 1. (2) Moreover that provision, as a condition subsequent, was void because a dramshop license cannot be issued to a corporation. 6 Am. & Eng. Ency of Law (2 Ed.), 504, 506; R. S. 1899, sec. 2993; State ex rel v. St. Louis Club, 125 Mo. 308. (3) It is also void because it is against public policy for defendant to be permitted to run a saloon in an individual's name and thus do indirectly what the law does not permit it to do directly. R. S. 1899, sec. 2990. (4) The court erred in permitting the defendant to show by parol what the intention of the original parties to the lease was as to the use of these premises. Such intention must be gathered from the lease itself. For that reason also defendant's instruction is erroneous. Rubey v. Coal & Mining Co., 21 Mo. App. 159; 17 Am. & Eng. Ency. of Law (2 Ed.), p. 2; Stillwell v. Railway, 39 Mo. App. 221.

*M. C. Early* for respondent.

(1) The lease on its face shows that the premises were rented for a saloon and that it was to become null and void if a saloon license could not be obtained. (2) In case of ambiguity the situation of the parties, the subject matter of the contract, the negotiations leading to it, the object the parties had in view, etc., may all be shown by parol evidence, not to vary the contract, but in order to arrive at the true meaning of the contract. Ellis v. Harrison, 104 Mo. 279; Williams v. Railway Co., 153 Mo. 534; Crawford v. Elliot, 78 Mo. 497; Carney v. Chillicothe Co., 76 Mo. App. 536; McDonald v. Longbottom, 1 Ellis & Ellis (E. C. L.) 977. The court will give the contract a construction most equitable to the parties and which will not give one of them an unfair or unreasonable advantage over the other. McManus v. Shoe Co., 60 Mo. App. 216.

STATEMENT.—This appeal involves the interpretation of the following lease:

"This indenture made the twelfth day of October, in the year of our Lord, nineteen hundred and three, between J. H. McClure of the one part and the St. Louis Brewing Association, a corporation, of the other part, *Witnesseth*:

"That the said J. H. McClure in consideration of the rents, covenants and agreements hereinafter mentioned and reserved on the part of the said J. H. McClure, executors, administrators and assigns, has leased, and by these presents does lease to the said St. Louis Brewing Association, a corporation, building situated on the northwest corner of Twentieth and O'Fallon streets and known as No. 1301 North Twentieth street in Block No. 2302, in the city of St. Louis, to commence on the first day of December, 1903, for and during the term of five years at the yearly rental of nine hundred dollars, payable in equal monthly instalments in advance, seventy-five dollars.

"Said lessee to make all inside repairs necessary inside of building and pay water license assessed against the property.

"Any failure to pay each month's rent when due, and after demand of the same, to produce a forfeiture of this lease, if so determined by said lessor or his successors. The lease of said tenement, or any part of it, is not assignable, under penalty of forfeiture, without the written consent of said lessor, and it is hereby covenanted that at the expiration of this lease, the said tenement and premises are to be surrendered to said lessor, his heirs, assigns or successors, in the condition received, only excepting natural wear and decay, or the effects of fire. All inside repairs deemed necessary by the lessee to be made at the expense of said lessee, with the consent of said lessor, and not otherwise.

"The said lessee, and all holding under it, hereby engage to pay the rent above reserved, and double rent for every day it or anyone else in its name, shall hold onto the whole or any part of said tenement after the expiration of this lease, or of its forfeiture for non-payment of rent, etc.

"This tenement and premises to be kept free of any nuisance thereon, at the expense of said lessee. Said lessor agrees not to lease, rent, etc., to another brewery, saloon or dramshop, on said block, during this lease. Should said saloon license be not secured on said premises in said block, then this lease is null and void on ninety days' notice from said lessee.

"Made and signed in duplicate this Twelfth day of October, 1903.

"J. H. McClure,                              (Seal.)

"St Louis Brewing Association,

"Per Henry Nicolaus, President. (Seal.)
(Seal of St. Louis
Brewing Association.)

Attest, Philip Stock, Secy."

After the quoted lease had been executed, Henry Wurtenbacher conducted a dramshop on the premises under two licenses of six months each. Wurtenbacher had been an employee of the defendant company and the record is doubtful as to whether he occupied the premises as a subtenant of the brewing company and was a bona fide proprietor of the saloon, or an agent of defendant. At the end of a year a petition was circulated among the property-owners in the block for a third license to be issued to August Gorka, but as the majority remonstrated against the saloon, the license was refused by the excise commissioner. Subsequent to the date of the lease and on September 28, 1903, J. H. McClure, the lessor, sold and conveyed the premises to Amanda Twelker, who sold and conveyed them to plaintiff the Conservative Realty Company in June, 1905. Mrs. Twelker was the owner of the fee and the landlord early in 1905 when the effort to procure a third license failed; wherefore defendant served a written notice on her April 25, 1905, that as it had been found impossible to procure a license for the keeping of a dramshop on the lot, the lessee (St. Louis Brewing Company) elected, under the terms and provisions of the lease, to terminate the tenancy on the first day of August, 1905, and would then surrender possession of the premises to her. Two men took the keys of the building to the office of plaintiff's agent July 31, 1905, and on the refusal of the agent to accept them, threw them on the floor. The conservative Realty Company which, as said, had become the owner of the premises, notified defendant in writing on August 1, 1905, of the acts of the men who had brought the keys, of plaintiff's refusal to accept the keys or possession of the premises or a surrender of the lease, and, further, that the keys were subject to defendant's disposal. This action was brought before a justice of the peace for seventy-five dollars, the rent for August, 1905, and was appealed to the circuit court. On the

trial in the latter court evidence was received over the objection of plaintiff to show that at the expiration of the second license it was impossible to procure another, that the rental reserved was more than the property would bring for any other purpose than a saloon and it was rented by defendant to have a saloon conducted on it. At the instance of defendant the court declared the intention of the parties to the lease, and all the facts and circumstances attending its execution, were matters for consideration, and if the court found from the evidence the parties entered into the lease with the understanding a saloon should be kept on the demised premises during the term, and further found this was the inducement to defendant to enter into the lease and it otherwise would not have done so, and that at the time stated in the evidence, defendant was unable, after an honest effort, to procure a license to conduct a dramshop, and thereafter defendant served on the owner of the premises ninety days' notice of its intention to terminate the lease, then the verdict must be for defendant. Plaintiff requested the court to declare the law to be that if defendant paid one or more monthly installments of rent and the installment for August had not been paid, the finding must be for plaintiff; that if the court found defendant caused a saloon to be conducted in the premises under a license granted to one Wurtenbacher after the beginning of the term fixed in the lease, to-wit, December 1, 1905, and at the end of six months an additional license was procured, defendant thereafter had no right to declare the lease terminated on account of failure to procure a license. The court found the issues of fact for defendant and plaintiff appealed.

GOODE, J. (after stating the facts)—If evidence to prove the purpose for which defendant leased the premises was incompetent, its admission was harmless because the lease document shows on its face what was

understood by both the parties to it to be defendant's purpose. The lessor (McClure) bound himself not to lease or rent for another saloon or dramshop in said block during the existence of the lease in question. That proviso not only shows the premises were let for a dramshop, but that the lessor agreed to protect the lessee against competition in the block. The next clause, which provided that if a saloon license could not be procured, the lease should be null and void on ninety days' notice, speaks to the same intent. There is no ambiguity concerning this point, and in determining whether the lessee had a right to terminate the tenancy whenever a saloon license could not be procured, whatever help may be drawn from the clear purpose to let the premises for use as a saloon, is available to the court on the face of the lease without reference to extrinsic evidence. The intention of both parties regarding the purpose of the demise must wield potent influence in interpreting any clause of it; for the duty of the court is to give an effect to each clause which will promote the general purpose, if it is possible, in view of the language, to do this. [Union Dept. Co. v. Railroad, 113 Mo. 213, 20 S. W. 792; Bent v. Alexander, 15 Mo. App. 181.] The clause in question runs in these words: "Should said saloon license be not secured on said premises in said block, then this lease is null and void on ninety days' notice from said lessee." Plaintiff's counsel contend this stipulation means that only in the event a single license, to-wit, the one for the first six months, could not be procured, defendant might end the term by giving ninety days' notice; whereas defendant contends the meaning of the clause and the intention of the parties, was that if, at any time during the term of five years, a license could not be procured, the lessee might surrender the term. In aid of this interpretation they point to the statutory law of the state which limits saloon licenses to a term of six months, and to the obvious

purpose of the demise, arguing that it would be unreasonable to hold defendant was willing to commit itself for the entire five years on the strength of a license for the first six months. If the language was clear its meaning would be obligatory on the parties, although the consequences might be harsh and the stipulation contrary to the mode in which men ordinarily bind themselves by contracts. [Sachleben v. Wolf, 61 Mo. App. 28.]    But the clause to be construed is ambiguous in this: the language is "should said saloon license be not secured on said premises," etc.    Those words convey the impression that some license had been mentioned in the previous part of the lease to which the phrase "said saloon license" referred. But no particular license had been mentioned, nor had the word "license" been used before in the instrument. Hence there is no more reason to hold the words "said saloon license" referred to a license for the first six months, than to hold they referred to one for any other six months. There is some weight in the argument of defendant's counsel that they referred to one license and not the numerous licenses which would need to be procured for a dramshop during the five years' term, since the word license is in the singular number. According to old law, the patent ambiguity of the clause might make the stipulation void; but this doctrine is no longer enforced as strictly as formerly; and whether an ambiguity is patent or latent, a court will endeavor to glean the intention of the parties from the whole instrument and the circumstances attendant on its execution. [2 Parsons, Contracts (9 Ed.), *561 et seq.] Taking into account the law regarding saloon licenses, and the purpose for which the premises were taken by defendant, we have no doubt the intention of the parties was to make the existence of the lease contingent on the ability of defendant to procure from time to time a license. That is to say, defendant was accorded the privilege of ending the term on ninety days'

notice, whenever it became impossible to obtain a license. It is highly improbable the brewing association would have entered into the lease to have a saloon kept on the premises unless it knew beforehand a license for the first six months could be procured. Indeed, testimony was admitted without objection to prove the officers of defendant had investigated this matter before the lease was executed, and were assured a license would be granted. Therefore it was useless to put the stipulation in the lease, if it related, as plaintiff's counsel say, only to the first license. To adopt such a view we must conclude the parties stipulated for a cessation of the term in case it turned out to be impossible to get a license for the first six months, when, in fact, defendant made sure of this contingency before it took up with plaintiff the proposition to rent the property.

Plaintiff's counsel insist that inasmuch as a corporation cannot be licensed to keep a dramshop, the clause providing for the surrender of the term in the event a license for a dramshop could not be procured, is against public policy and void. It is argued that if defendant was permitted to put an individual in possession of the premises to conduct a saloon for its benefit, this would be doing indirectly what it was forbidden to do directly. It does not appear the defendant was going to put a man in there to conduct a saloon as its agent; but merely that the property was rented for saloon purposes and probably to increase the sale of defendant's beer. The lease does not reveal what arrangement defendant contemplated making with the person who would keep a dramshop on the property, nor are we informed by the evidence what terms it actually made with Wurtenbacher who kept one there. The record will support the conclusion that the arrangement was not one by which defendant was the real owner of the saloon and the keeper, its custodian. Hence if an arrangement of the latter sort would be unlawful, and we do not decide the point,

it was not established. The argument for defendant in this connection, if sound, would avoid the entire lease on which it sues as against public policy, rather than a particular clause; because the lease shows McClure demised the property for dramshop purposes. However it is not unlawful for a brewing corporation to lease premises for the purpose of having its beer sold in them. Such contracts have been upheld. [Holin v. Brewing Co., 21 App. Div. (N. Y.) 204; Koehler v. Reinheimer, 26 Id. 1.]

We are clear the judgment is for the right party and will be affirmed. All concur.