ROY WISETH v. GOODRIDGE FARMERS ELEVATOR & MILLING COMPANY AND ANOTHER.[1]

May 1, 1936.

No. 30,799.

[1]Reported in 266 N. W. 850.

262

*Theodore Quale,* for appellants.
*H. O. Chommie,* for respondent.

DEVANEY, CHIEF JUSTICE.

Action in replevin for 19,270 pounds of sweet clover seed stored with the defendant Goodridge Farmers Elevator & Milling Company, at Goodridge, and claimed by plaintiff and by defendant Leonard Tenold. The elevator company claims no title to the seed and is serving only as a custodian or stakeholder pursuant to stipulation of the parties. The defendant hereinafter referred to will be Leonard Tenold.

The sweet clover crop involved here was grown by plaintiff upon a tract of 50 acres belonging to one A. Schatz without any contract or agreement with the owner.

As is the usual custom, the sweet clover crop was seeded with a crop of small grain. Plaintiff harvested the small grain crop in 1931 and the sweet clover in 1932. In the process of harvesting the sweet clover a certain proportion of the seed was unavoidably shelled out, causing the tract to become reseeded. This is an expected occurrence. The shattered or shelled seed springs up the next year as "young clover and a year later is a seed crop. Sweet clover is a biennial and not an annual crop." Thus in 1934 the seed shelled in 1932 became a seed crop ready for harvesting.

Early in March, 1934, defendant Tenold began corresponding with the owner, Schatz. In the latter part of June Schatz delivered to defendant a receipt for $40 "as hay rent for 1934." It is the claim of defendant that his contract with Schatz was intended to cover the sweet clover crop as well as the hay crop then growing on the land.

In August of the same year plaintiff, Wiseth, made an agreement with Mr. Schatz covering the rental of the land for the current season as well as for the prior years. This was before any of the crop had been harvested.

Plaintiff then harvested an oat crop that was on the land. Shortly thereafter Tenold made a demand for a share of the oats and for the first time claimed an interest in the sweet clover.

When the sweet clover was ripe both the plaintiff and the defendant began the process of cutting, defendant cutting about 10 acres and plaintiff approximately 40. Later the crop was hauled away and threshed by plaintiff and stored with the elevator company pursuant to the agreement between the parties.

The action was tried to the court without a jury who found for the plaintiff. This appeal is from an order denying defendants a new trial.

Only one question need be considered: Did defendant's contract with the owner include the sweet clover crop growing on the land?

Both claimants concede that in determining this question "the criterion is the intention of the parties to be derived from the whole instrument and transactions." In considering this problem we have only to determine whether the court's finding that defendant's contract "covered and included the hay on said premises and did not include and cover the aforesaid sweet clover seed crop thereon" has support in the record. The general rule is that construction of a contract must be determined by the court as a question of law. Where, however, the terms are ambiguous and their meaning must be determined from extrinsic evidence as well as the writing which comprises the contract, it is a question of fact for the jury. O'Connell v. Ward, 130 Minn. 443, 153 N. W. 865. The same rule, of course, applies where a court sits as a fact-finding body, as in this

case. That the contract involved herein is so hazy and uncertain as to bring this case within the rule is apparent from a review of the facts.

On March 8, 1934, defendant Tenold first wrote Schatz inquiring if he wanted to rent his farm, stating: "There is some hay, tame hay and also some wild hay." On March 13 Schatz replied and inquired as to what Tenold could pay in cash for the land. Defendant in answer wrote to Schatz on March 18 making an offer of $40 or a one-eighth share of the crop and said: "There will be some hay and probably some sweet clover to be cut for seed." Mr. Schatz wrote to Tenold on March 27 to the effect that $40 was a rather low price and that he should receive at least $50, stating: "That means for hay and grass seed only."

No further correspondence was carried on between Tenold and Schatz until May 2, approximately five weeks later, when Tenold wrote inquiring whether Schatz would take his note for the rent, and added: "I would like to hear from you as hay meadow is hard to get, that is upland hay and tame hay." On May 14 Mr. Schatz replied: "I would take $40. Hay is going to be scarce all over the country and prices will be sky high. I think $40 cash is very reasonable price." There followed some further correspondence during the course of which Tenold sent to Schatz the sum of $40. On June 15 Tenold wrote asking Schatz to send a receipt or "something to show that I have the full right to get this hay and seed as there is another fellow that has been using it a number of years and not paying rent as I understand." During the week of June 25 Schatz called on Tenold and delivered to him a receipt which recited the payment of $40 for "hay rent."

It will be observed that in Tenold's first letter to Schatz, written on March 8, he mentions only hay and makes no reference to sweet clover. Defendant's letter of March 18 states that there will be "some sweet clover to be cut for seed." Schatz' reply to this letter also mentions "grass seed." There is no question that the correspondence to this point is strong evidence that Tenold intended to secure the sweet clover seed as well as the hay on the land. It is clear, however, that no contract had as yet been entered into as

Schatz set his price at $50 and did not accept defendant's offer of $40.

Five weeks later Tenold renewed the correspondence. On May 2 he wrote mentioning in his letter only hay. Schatz' reply on May 14 likewise refers only to the hay on the land. It is true that Tenold in his letter of June 15 mentions "hay and seed," but the receipt given to Tenold by Schatz makes no reference to sweet clover, nor is the word "seed" contained therein. The receipt on its face is only for "hay rent."

At best, the early correspondence creates an ambiguity as to the intent of the parties. Without it the agreement clearly would cover only the hay on the land, as the subsequent correspondence and the receipt alone could not reasonably be construed as referring to more than the hay. There is testimony that when Tenold received the receipt he examined it but made no comment on the fact that it was for "hay rent" only. There is also testimony that the sum of $40 or $50 was a reasonable price for the hay alone. The owner, Schatz, treated the contract as one covering the hay only as shown by his subsequent contract with Wiseth, which gives Wiseth the right to all crop on the land except the hay. Considering all these facts together with and in light of all of the correspondence, we conclude that the finding of the trial court has ample support in the record, and this court would not be justified in disturbing the result reached.

It may be that defendant intended to secure the sweet clover as well as the hay. However, a secret intention or motive of one party to the contract is not material. The expressed intention determines the terms of the contract. O'Donnell v. Minneapolis Daily News Co. 119 Minn. 378, 138 N. W. 677.

The order appealed from is affirmed.