# MYRON F. LESLIE v. MINNEAPOLIS TEACHERS RETIREMENT FUND ASSOCIATION.[1]

October 27, 1944.

No. 33,781.

[1]Reported in 16 N. W. (2d) 313.

*A. E. Bryngelson* and *W. W. Bradley,* for appellant.
*Covell & Root,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by a member of defendant association, under the declaratory judgments act, L. 1933, c. 286, § 1, Minn. St. 1941, § 555.01 (Mason St. 1940 Supp. § 9455-1), for a construction of Article V, Section 9, of defendant's Articles of Incorporation, effecting a downward revision of annuity payments to its members. The case was tried by the court, which on June 3, 1943, made findings and conclusions in favor of defendant. Plaintiff's motion for amended findings or a new trial was denied, and he appeals from the order.

The provision in question reads as follows:

"(9)  The Board shall determine, adopt and certify the *rates at which annuities* and other benefits shall be granted and the basis upon which the liabilities of the several funds shall be computed. The rates shall be accurate to provide for all benefits as near as may be at actual cost, *but shall not be less than the rates necessary to provide for the full payment of the said benefits according to McClintock's Tables of Mortality Among Annuitants with interest at four per cent.* No revision of rates shall affect adversely the rights of any beneficiary under an application made prior to such revision." (Italics supplied.)

It is plaintiff's contention that the above language, particularly the portion in italics, forbids defendant's board from reducing benefits to less than those provided for in McClintock's Tables of Mortality Among Annuitants with interest at four percent per annum. Defendant asserts that the term "rates" as used therein means the amount charged for annuity benefits and that such language does not prevent the board from lowering benefit payments

when financial conditions require such reduction; that said provision merely prohibits the granting of an annuity for a rate or charge less than the rates necessary to provide for the full payment of the annuity granted, based upon whatever interest factor is authorized from time to time by said Article.

The resolution here under attack was adopted by the board on February 11, 1942, and provides:

"Whereas, the Board has heretofore received recommendations from Mr. E. D. Brown, Actuary for the Association, with reference to a revision of the rates at which annuities shall be granted, and

"Whereas, the Board has given full consideration thereto and to the experience of the Association and the other factors properly to be taken into consideration in the adoption and revision of such rates;

"Be It Resolved, that pursuant to Section 9 of Article V of the Articles of Incorporation as amended, the Board hereby determines, adopts and certifies the rates at which annuities shall be granted under the provisions of Section 2, 3 and 4 of Articles IX of said Articles, shall be and are, as follows:" (Here follows a table showing rate of Life Annuities and 15-Year Guaranteed Annuities available for men and women members of the association at ages from 50 to 75 years.)

"The basis of said rates is the American Annuitants' Select Male Table of Mortality adjusted two years younger for males and seven years younger for females with interest at the rate of *three per cent per annum*. Said rates shall go into effect and be applied to all annuities granted on and after February 1, 1943, and said rates are accordingly revised; such revision, however, shall not apply to any beneficiary whose application has been received by the Association prior to February 1, 1943.

"Be It Further Resolved, that the rates above determined, adopted and certified are hereby found and declared to be necessary and appropriate to the security and the best interests of the Association and its members." (Italics supplied.)

It is to be noted that this change in effect provided for annuities on the basis of investments by the association at three percent rather than at four percent as required by the original Article V, Section 9. This resulted in a reduction of approximately ten percent in annuity payments to applicants subsequent to February 1, 1943.

At the time of its original formation in 1909, defendant was not on an actuarial or reserve basis, and as a result, by 1923, its liabilities exceeded its assets by more than two million dollars. Accordingly, its Articles were amended as of January 1, 1924, to place it on an actuarial and reserve basis to avoid future insolvency. Shortly thereafter, on May 14, 1924, notwithstanding the provision in Article V, Section 9, the board of trustees adopted rates and annuities based on the American Annuitants Select Table *with interest at three and one-half percent,* a rate which produced lower annuity benefits than McClintock's Tables of Mortality Among Annuitants *with interest at four percent,* as set forth in said Article. Such rates were not challenged, and all annuities since 1924 have been granted and accepted by the beneficiaries thereunder at the reduced rate provided for. Plaintiff and all other members of the association accepted such reduced rates at all times subsequent to May 14, 1924.

With reference to the 1942 reductions here under attack, plaintiff does not question the good faith of defendant in making such changes, but contends that they can be effected only by amendment to Article V, Section 9, of the Articles as above set forth.

At the trial, plaintiff presented witnesses who testified that said Article V, Section 9, was included in the Articles in its present form because of the insistence of plaintiff and other members at several meetings in 1922 and 1923 that the proposed benefits to members should not be reduced without amendment to the Articles and that said provision should be construed in accordance with such intent so as to prevent reduction of benefits by the board.

In opposition to this, defendant presented evidence that the original draft of the Articles as first submitted to the members in-

cluded the clause as it now exists, and that it was therefore not inserted or added at the insistence of plaintiff prior to the formal adoption of the Articles on January 1, 1924.

Defendant also presented the testimony of Actuary Edward D. Brown, Jr., as an expert witness, who testified with reference to the meaning of said provision as follows:

"My definition of an annuity rate is a calculated amount derived from a mortality table and rate of interest which is used to determine the benefit which may be derived by the application of this rate to a certain amount of money. * * * Under annuities the annuity rate is, therefore, the amount which is charged for each unit of annuity benefit."

At the conclusion of the trial the court made findings in substance as follows:

(1) That "annuity rates" as used in Article V, Section 9, means the amount which is charged for each unit of annuity benefits;

(2) That during the past ten years there has been a trend of lowering interest yield on investments of the association;

(3) That the mortality experience of the association has been unfavorable to the association since 1924;

(4) That in revising the rates upward and lowering the benefits as to the future annuitants the board of trustees of the association acted on this interest and mortality experience;

(5) That the board acted in good faith in making the revision and that defendant appears to have a well-planned and well-managed association;

(6) That the board of trustees of defendant association has power by virtue of its Articles to determine rates at which annuities and other benefits shall be granted, and that the action of the board of trustees on February 11, 1942, was and is within such power, and does not violate any of the Articles of Incorporation, By-laws, Rules, or Regulations of the association.

■ The rule is well established that ordinarily the construction of a writing which is unambiguous is for the court, particularly

when the intention of the parties is to be gained wholly from the writing. However, if the language is ambiguous, resort may be had to extrinsic evidence, and construction then becomes a question of fact, unless such evidence is conclusive. Wiseth v. Goodridge Farmers E. & M. Co. 197 Minn. 261, 266 N. W. 850. Ordinarily, the question whether the language of a contract is ambiguous is one of law for the court. Satterlee v. Lawler, 155 Minn. 181, 193 N. W. 118. The extrinsic facts which may be considered in aid of construction are ordinarily questions for the court. Cameron Mill & Elevator Co. v. Chas. F. Orthwein's Sons (5 Cir.) 120 F. 463, 56 C. C. A. 613; Satterlee v. Lawler, *supra*. It is also true that where parties to a contract have given it a practical construction by their conduct, as by acts in performance thereof, such construction may be considered by the court in determining its meaning and in ascertaining the mutual intent of the parties. Wilmot v. Minneapolis Auto. Trade Assn. 169 Minn. 140, 210 N. W. 861; Mienes v. Lucker Sales Co. 188 Minn. 162, 246 N. W. 667; Investors Syndicate v. Baskerville Brothers Holding Co. 200 Minn. 461, 274 N. W. 627. Where such extrinsic evidence is conclusive and undisputed and renders the meaning of the contract clear, its construction again becomes a question of law for the court. Ewing v. Von Nieda (8 Cir.) 76 F. (2d) 177.

■ Under the above principles, it is clear that here there is ample evidence to sustain the findings of the trial court as to the meaning of the language in Article V, Section 9. The court in its findings did not indicate whether its construction of the language was based upon the extrinsic evidence admitted by it or whether it concluded that the language was not ambiguous and therefore construction was a question of law for the court. Under either theory, it would appear that the findings must be sustained. It seems obvious that the parties intended by Article V, Section 9, to provide a safeguard to forestall dangers of future insolvency by permitting the directors to make the rate of benefits bear a reasonable relationship to the rate of interest the association was receiving on its investments and which the members must have known would vary

from time to time. To hold otherwise would mean that the membership could insist upon benefits based upon a four percent return on investments at times when the association might be receiving no better than two percent—a course which would lead to ultimate insolvency. The language used would seem to permit no other construction, and if the trial court concluded that no ambiguities were involved, we find no error therein. Under such circumstance, it would not be necessary to admit extrinsic evidence, and the testimony of plaintiff's witnesses and of the defendant's expert would become immaterial.

■ On the other hand, if the trial court determined that the terms as set forth were not clear, that resort to extrinsic evidence was necessary, and that its findings were based upon such extrinsic evidence, it is still clear that such findings find ample support therein. The testimony of the actuary, Edward D. Brown, Jr., in itself would be sufficient for this purpose. However, in addition to this we have the practical construction placed upon this provision of the Articles by the parties themselves subsequent to 1924. While it is true that plaintiff contends he did not know that the provisions of Article V, Section 9, had been changed pursuant to resolution by the board on May 14, 1924, it cannot be doubted that in an association of this size, where regular meetings were held and regular reports made to its members, all of them had access to or knowledge of this change in said Article and of the lower rate of annuities granted to members as a result thereof. In any event, the evidence taken all together is amply sufficient to sustain the trial court's finding as to the meaning of the contract if the court regarded it as ambiguous and such extrinsic evidence made the construction thereof a question of fact.

■ The good faith of defendant or its board is not questioned in these proceedings; in fact plaintiff, on cross-examination, testified as follows:

"Q. Do you in any way, Mr. Leslie, question the good faith of the board of directors of the Minneapolis Teachers Retirement Fund

Association in adopting the resolution of February 11, 1942, revising the rates?

"A. I have never questioned that at all.

"Q. Do you now?

"A. No."

It is obvious that the actions of the board in making the revisions here involved were for the purpose of safeguarding the solvency of defendant. It would seem that such conduct should meet with the approval of the membership, which would suffer severe financial loss if the directors were derelict in this respect. If it later develops that interest rates for investments should reach a higher level, there can be little doubt that the board will again restore the rates previously in effect.

■ The revision in question does not apply to annuities already granted. Article V, Section 9, above referred to, provides that "No revision of rates shall affect adversely the rights of any beneficiary under an application made prior to such revision." An examination of the articles and by-laws, particularly Article V, Section 9, compels the conclusion that the term "application" as used therein, refers to application for annuity rather than application for membership. Consequently no vested rights are involved or violated. As stated in Jenkins v. Talbot, 338 Ill. 441, 470, 471, 170 N. E. 735, 745, 746, 80 A. L. R. 638, 654, 655:

"* * * It follows that in any re-adjustment of rates it is necessary to the continued existence of the society that there be mutuality—i. e., that each member pay his total insurance cost, whether by the 'step' or the 'level' rate. * * *

* * * * *

"* * * Surely no one can have a vested right in a disaster. There was in this re-adjustment of rates, therefore, no violation of contract rights of appellants."

We hold that the language in question in Article V, Section 9, is ample authority for, and justifies the revision of, the rates here challenged, in view of the present change in economic conditions,

and that the evidence sustains the trial court's findings to this effect.

Affirmed.

[1]Reported in 16 N. W. (2d) 326.