## TOWN & COUNTRY SHOPPING CENTER, A COPARTNERSHIP COMPRISED OF C. & F. MACHINE WORKS AND OTHERS, v. SWENSON FURNITURE COMPANY.

110 N. W. (2d) 525.

September 15, 1961—No. 38,243.

*Miner, Miner & Miner,* for appellant.

*Fine, Robins & Simon, William I. Fine,* and *Ralph S. Schneider,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment entered in municipal court of the city of Minneapolis in favor of the plaintiff landlord. The judgment is

based upon a claim for rent of commercial property for a period of 1 month and for certain utility bills. The tenant vacated the property on April 1, 1957, which he claims was the date on which the lease expired. The trial court agreed with the landlord that the lease actually ran for an additional month to May 1, 1957, and that the landlord is entitled to rent for that month and to payment of the utility bills. The latter obligation is not questioned, but the tenant contends that under the terms of the lease it is not obligated to pay rent for the month of April 1957. This issue turns upon the construction of the lease in question.

In December 1951 defendant, Swenson Furniture Company, was a tenant under a lease in a shopping center owned by Bloomington Plaza, Inc., plaintiff's predecessor in title. Defendant company needed more space for its business and in December 1951 it negotiated for a larger store in the same shopping center. Winfield V. Sjostrom, president of defendant, negotiated the terms of the lease for larger quarters with Donald Shanedling, president of Bloomington Plaza, Inc. At the time the lease was prepared the new premises were in the process of construction.[1] The lease provided for a term of 5 years from April 1,

---

[1] The pertinent portions of the lease are as follows:

"To HAVE AND To HOLD, The said premises * * * for the term of five (5) years from April 1, 1952, for the following purposes, to-wit:

Furniture Store

yielding and paying therefor the rent of Nineteen Thousand Eight Hundred and no/100 Dollars ($19,800.00) per term.

"And the said Lessee does covenant to pay the said rent in equal monthly payments in advance, to-wit: The sum of Three hundred and no/100 Dollars ($300.00) on or before the 1st day of every month during the first two years of the lease and Three hundred fifty and no/100 Dollars ($350.00) during the last three years of said lease.

* * * * *

"Tenant may occupy present store No. 13 after April 1st, 1952 on November 1st, lease until this store (60 x 60) is finished.

"Rent under this lease to start when building is completed if not ready for occupancy by April 1st, 1952.

"Lease on store No. 13 shall be automatically cancelled when this lease takes effect."

1952, for a total rent of $19,800, payable $300 per month for the first 2 years and $350 per month for the last 3 years. It provided that the rent was to start when the new building was completed if it was not ready for occupancy by April 1, 1952, and that defendant could continue in possession of the premises occupied at the time the lease was executed until the new building was completed.

It appears there was a delay in the completion of the new quarters. Defendant did not take occupancy until May 1, 1952, a month after the date set in the new lease. Defendant paid rent to Bloomington Plaza, Inc., for the month of April 1952 for use of the premises it occupied at the time the lease was executed and paid a total of $19,450 for the months of May 1952 through and including March 1957 for use of the larger quarters. It was the tenant's understanding that the term of the lease would expire April 1, 1957. It did not intend to renew the lease and, accordingly, made arrangements to find another location. On April 1, 1957, defendant moved from the shopping center to a new address. Thereafter the landlord commenced this action.

We are called upon to determine whether the term of the lease was from April 1, 1952, to April 1, 1957, as defined in the term provision of the lease, or whether, as the landlord contends, the delay in occupancy of the new premises by the tenant extended the term of the lease from May 1952 to May 1957. In other words, it is the contention of the landlord that the term of the lease is defined by the rental provisions contained in it.

The officer of Bloomington Plaza, Inc., who negotiated the lease, did not testify. It does not appear from the record who prepared the lease. It is well recognized that the object of construction of a contract is to ascertain and give effect to the intention of the parties, and to accomplish that purpose the contract should be construed as a whole. In Orme v. Atlas Gas & Oil Co. 217 Minn. 27, 30, 13 N. W. (2d) 757, 760, the rule with reference to construction of leases is stated:

"Leases, like other writings, should be construed so as to give effect to the intention of the parties as manifested by the words used. A lease is to be construed as a whole. The process of construction involves consideration of the subject matter, surrounding circumstances, the ob-

jects and purposes to be accomplished, and the natural meaning of the language used in the lease. Commercial Union Assur. Co. Ltd. v. Foley Bros. 141 Minn. 258, 169 N. W. 793. Great weight should be given to the intention of the parties regarding the purpose of the lease. Conservative Realty Co. v. St. Louis Brg. Assn. 133 Mo. App. 261, 113 S. W. 229."

In support of its argument that the parties intended the lease to run until May 1, 1957, the landlord calls attention to the provision of the contract to the effect that for the first 2 years of the term the rent provided for was $300 per month and for the last 3 years the rent was to be $350 per month. It points out that the $300 per month rental was paid from May 1, 1952, until May 1, 1954, and that rent for the subsequent period of the lease was on the basis of $350 per month. The landlord argues that this circumstance amounts to a contemporaneous construction of the agreement of the parties which establishes a mutual understanding to the effect that the period for payment of the $350 rental was to terminate on May 1, 1957. There is, however, no conflict in the evidence outside of the document itself bearing upon the intent of the parties at the time the lease was made. Arthur H. Freeman, a member of a partnership comprising the landlord, testified that his records contained the notation that the increased rental of $350 a month was to begin April 1, 1954. Referring to his ledger, Freeman testified:

"There is a notation here, 'Rent starting April 1st—' just, 'April 1st, $350 per month.' Now, I don't know if the girl informed him until after she received his check or in advance, I have no idea."

Although it is not clear from the record that defendant actually sent the additional $50 rent for the month of April 1954, Mr. Sjostrom testified:

"* * * I remember that the girl, my office girl at that time, said she had a communication from the people that we rent from that they wanted $50 more on the lease, and I said, 'Send it.' I think it was sent."

Aside from the circumstances just mentioned, we find no evidence bearing on the intention of the parties extrinsic of the document itself as to when the lease should begin and when it should end. In a search

for this intention, certainly the term specifically defined in the lease cannot be ignored. The natural and reasonable construction of the term is to be found in the express language used. The term defined is not ambiguous. We do not feel that under the circumstances in this case the force of this clearly defined provision is lost by reason of doubt or ambiguity arising from provisions relating to the amount and time of rent payments. When the parties entered into the lease it was recognized that, while they agreed upon the date the lease should take effect, they were aware that there would be a possibility of delay in occupancy. It is significant, however, that the lease did not provide that the term should be for a 5-year period from date of occupancy. The lease provided for an accommodation of the defendant by permitting it to continue occupancy of the original location until completion of the new quarters. It is apparent from the record that defendant believed in good faith that the lease expired on April 1, 1957. It was because of this understanding that it made arrangements to move to a new location on that date. It was not necessary for the defendant to move on April 1, 1957. It could have as well moved a month later. Mr. Sjostrom of the defendant corporation testified that the transfer of the business to the new location "was synchronized with our lease so that when our lease was out we could move in." There is evidence in the record that the landlord had the same understanding. The notation entered upon the ledger sheets by the landlord to the effect that the last 36 months of rent should be on the basis of $350 a month beginning April 1, 1954, is substantive evidence of the fact that the landlord understood the term would expire April 1, 1957. The record does not indicate whether this notation was made by plaintiff or its predecessor in title, nor does the record show the date on which the notation was made. In any event the obvious purpose of the notation was to serve as a reminder to the landlord that the first 2 years of the lease would end on April 1, 1954, and that the entire term would end 3 years later.

Where, as here, the extrinsic evidence is conclusive and undisputed and renders the meaning of the contract clear, its construction becomes a question of law for the court. Leslie v. Minneapolis Teachers Retirement Fund Assn. 218 Minn. 369, 374, 16 N. W. (2d) 313, 316. In light of the express provision as to the term of the lease and viewing

the contract as a whole, together with the extrinsic evidence contained in the record, we conclude that the natural and reasonable construction to be placed upon it was that given to it by defendant. We are, accordingly, of the view that the time of expiration of the lease is controlled by the specific provisions of the term clause and is not to be spelled out of the provisions relating to time and amounts of rental payments.

Reversed except as to that part of the judgment which relates to service and utility charges.

Reversed in part and affirmed in part.

KNUTSON, JUSTICE (dissenting).

I cannot agree with this decision. It is apparent from the face of the lease involved that an ambiguity exists between the stated terms of the contract and the provisions relating to the payment of rent. Where there is an ambiguity in a contract, and the construction depends upon extrinsic evidence as well as the writing, there exists a question of fact for determination by the jury or the court sitting without a jury. Wiseth v. Goodridge Farmers Elev. & M. Co. 197 Minn. 261, 266 N. W. 850; 4 Dunnell, Dig. (3 ed.) § 1841. The above opinion sets aside the determination of the trial court on this issue of fact. I think that there is ample evidence to sustain the court's finding.

Furthermore, it seems to me that the instrument itself is clear enough to show what the intention of the parties was. It is true that the lease provides that the term is for 5 years from April 1, 1952. However, it provides for the payment of rent in the amount of $19,800 for the term, payable at the rate of $300 per month for the first 2 years and $350 per month for the last 3 years. It then provides:

"Rent under this lease to start when building is completed if not ready for occupancy by April 1st, 1952."

It is conceded that the building was not ready for occupancy until May 1, 1952. It must follow that rent, under the express terms of the lease, commenced on May 1, 1952, and was payable thereafter at the rate of $300 per month for the first 2 years and $350 per month for the next 3 years until the sum of $19,800 had been paid. It is conceded that rent in the sum of $19,450 is all that has been paid, and it seems to

me that it follows that there is a balance, under the express terms of the contract, of $350 still due. To say that under these circumstances the trial court's finding is not sustained by the evidence, which is what we must say in order to reverse, is putting ourselves in the position of the trier of fact. I think that the case should be affirmed.

NELSON, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Knutson.