VERNON T. CLARK, d.b.a. CLARK'S
HOME FAIR, AND OTHERS v. CROSSROADS
CENTER (ROCHESTER), INC.

172 N. W. (2d) 560.

November 14, 1969—No. 40814.

*Faegre & Benson, Lawrence C. Brown,* and *Arthur L. Doten,* for appellant.

*Dingle & Krieger* and *Robert W. Patterson,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

ROGOSHESKE, JUSTICE.

The determinative issue raised on this appeal in plaintiffs' action for declaratory relief is whether parol evidence was properly admitted to contradict and explain the written record of the proceedings of the Board of Equalization of the city of Rochester establishing for tax purposes the 1963 valuation of buildings comprising a shopping center owned by defendant.

Defendant, as the owner of the land and buildings subject to real property taxes, developed the Crossroads Shopping Center in Rochester. Plaintiffs and others leased the premises under written leases. The terms of the leases varied in length. Each, however, included an identical tax-apportionment clause requiring defendant to pay all taxes levied on the land and buildings comprising the shopping center for the "base period" year as therein defined, and thereafter to continue to pay an amount equal to such "base period taxes" in all subsequent years for the full term of each lease. For the years following the base period, the aggregate of all taxes imposed upon the land and buildings in excess of "base period taxes" was required to be proportionately divided and paid by the lessees. The tax-apportionment clause defining the base period provides:

"*(a) Definition of Base Period Taxes.* On or before the last day of the year following the first year that all buildings cur-

rently contemplated to be built on the premises subject to tax * * * are assessed as a completed entity, Lessor shall compute and certify to Lessee the aggregate of all taxes and special assessments imposed upon the premises subject to tax based upon the then most recent tax bill. The amount so determined and certified to the Lessee is herein called 'base period taxes.' "

Challenging defendant's claim that the base period under this clause was 1963, plaintiffs brought this action to establish 1964 as the base period upon the claim that 1964 rather than 1963 was the first year that the buildings comprising the shopping center were assessed as a completed entity. The trial court adopted plaintiffs' claim, and defendant appealed from the judgment.

Excluding the parol evidence challenged by defendant, the undisputed evidence shows that as of May 1, 1963, the city assessor, Alfred Nelson, determined the market value for tax purposes of the buildings comprising the shopping center to be $1,167,784. He testified that in making his evaluations he did not assess the buildings as a completed entity for that year but arrived at their value by application of a square-foot rate representing reproduction costs and deducted therefrom the percentage of incomplete construction which he observed and recorded on his assessment cards. The Olmsted County assessor, Austin Dunagan, agreed with this valuation, but defendant objected and sought by review to have the Board of Equalization of the city establish the market value.

At its meeting on July 16, 1963, the board heard defendant's objection. As the minutes of this meeting disclose, G. P. Schoenfelder, representing defendant, asserted "that he could not see why" the assessor's valuation should substantially exceed the total construction costs of $1,044,616.66, set forth in a letter from the general contractor which he presented to the board. Thereupon, the minutes show:

"* * * The Board reviewed the figures and asked to have the same verified. Mr. Schoenfelder agreed to send certified state-

ments from Title Insurance Company as to month by month payouts and supporting date and also a statement from Ernest M. Ganley Co. Inc. [the general contractor] showing what is left unpaid. Mr. Dunagan also suggested that possibly on new annexations a discount of 10% could be given for the first year, because of incompletion. A motion was then made by McCaleb, second by Bergstedt, that the 10% discount be applied. All voted in favor thereof. (The figures were to be submitted to Mr. Dunagan by the next Board of Equalization meeting.)"

Two days later at the board's meeting on July 18, certified statements substantiating total construction costs were verified by the county assessor and presented by him to the board. The board's action establishing the 1963 valuation followed:

"* * * A motion was then made by McCaleb, second by Bergstedt, that the valuation of the Crossroads Center Inc. be approved at $1,044,616 less the one year 10% discount allowed for new annexations which would make the 1963 valuation $940,155. All voted in favor thereof."

Finally, it is undisputed that construction of all of the buildings was not completed as of May 1, 1963, and that in 1964, when construction was complete and the land and buildings reassessed, the valuation of the buildings (as distinguished from the land) remained the same as in 1963. The record does not reveal the valuation of the land, but we are advised by defendant that its valuation was substantially increased in 1964 over 1963.[1]

In support of their claim, plaintiffs were permitted, over defendant's objection, to introduce parol testimony of two members of the board and the county assessor to the effect that the reduc-

---

[1] It is only because of this disclosure that plaintiffs' position becomes understandable, for even though plaintiffs were to accept total construction costs as the valuation of the buildings for both 1963 and 1964 upon defendant's offer to disregard the 1963 10-percent discount granted by the board, plaintiffs would in fact benefit from having 1964 rather than 1963 fixed as the base period.

tion in the 1963 valuation of the buildings was granted to defendant because the construction of some buildings was incomplete, some were not rented, and the taxing authorities "were trying not to kill them before they started," and not because of "new annexations" as the minutes reflect. From this, plaintiffs took the position before the trial court that "buildings cannot be assessed as a completed entity until they are in fact completed."

Defendant's position at trial, expressed with considerably more clarity before this court, was that such parol testimony is not admissible to impeach or contradict the minutes of the board; that the minutes show clearly that the buildings were in fact assessed as a completed entity in 1963 without regard to the actual state of physical construction, on the basis, arguably, that total construction costs of new buildings are the equivalent of their market value. At oral argument, defendant concedes that if parol evidence was properly admitted, there is ample evidence to support the trial court's finding that 1964 rather than 1963 was the year the buildings were first assessed as a completed entity.

It is true that we have long been committed to the general rule that records of the proceedings of local public bodies required by law to be kept may not be impeached or contradicted by parol evidence in order that the dependability of the substance of such records be insured. State v. Crookston Lbr. Co. 85 Minn. 405, 89 N. W. 173.[2] However, it is equally well settled that where the record is ambiguous, extrinsic evidence will be received to enable the court to read the record in the sense the public officials participating in fact intended. Leslie v. Minneapolis Teachers Retirement Fund Assn. 218 Minn. 369, 16 N. W. (2d) 313; McCormick, Evidence, § 219. Moreover, in applying the parol evidence rule, no writing upon which the rights of parties affected depend can be read in the abstract, and the surrounding circumstances which resulted in the writing are readily ad-

---

[2] See, also, In re Petitions for Cancellation of Ditch Assessments, 213 Minn. 70, 5 N. W. (2d) 64; Annotation, 98 A. L. R. 1229.

missible to aid interpretation. McCormick, Evidence, § 220, p. 447. When the minutes of both meetings of the board are read together and interpreted in the light of the course of negotiations between the tax assessing authorities and defendant to obtain a reduction in the valuation of its buildings, we find the minutes ambiguous, or more precisely, equivocal, with respect to the reasons for the discount granted for the year 1963. A fair reading of the minutes under the circumstances shown leaves one with unresolvable doubt as to whether the discount was granted solely for "new annexations."

Thus, parol evidence was admissible to explain the reasons why the board not only granted defendant a discount but reduced the valuation determined by the city assessor. It is not without significance that defendant offered no evidence bearing directly on the narrow issue presented (except as reflected by the minutes of the board) of its negotiations to secure a reduction of the city assessor's valuation, despite its untenable position that total construction costs of new buildings are the equivalent of market value and the likelihood that a taxpayer would try to persuade taxing authorities to assess incomplete buildings "as if" they were fully constructed. Perhaps this position can be explained by the equally untenable position taken by plaintiffs at trial that it is inconceivable that buildings can be assessed as a completed entity until they are in fact completed. The reason for defendant to seek an "as if" valuation should have been apparent.

We hold that parol evidence was properly admitted, and accordingly the result reached by the trial court is clearly correct.

Affirmed,