# MARTIN RING AND OTHERS v. MINNESOTA ROAD BUILDERS, INC., AND ANOTHER.

116 N. W. (2d) 582.

August 10, 1962—No. 38,548.

*Sachs, Latz & Kirshbaum,* for appellants.
*Vincent E. Johnson,* for respondents.

MURPHY, JUSTICE.

This is an appeal from orders of the trial court denying motions for amended findings of fact, conclusions of law, and order for judgment or for a new trial. The result must turn upon the construction of an excavation contract.

The plaintiffs Martin Ring, Harold Ring, and Colonial Realty, Inc., a corporation, hereinafter referred to as the landowners, entered into a contract with Minnesota Road Builders, Inc., a Minnesota

corporation, hereinafter referred to as the contractor, by which it was agreed that the contractor would undertake to do certain work in the leveling and grading of a 21-acre tract which the landowners intended to improve and plat as an addition to the village of Golden Valley. The tract was uneven with a large hill in about the middle of it. It was contemplated by the agreement that the contractor would undertake "the grading, leveling, moving and excavation as may be required" in accordance with a street grade plat and profile map, "so that the level of the grade shall be, as nearly as may be, one foot below the level shown upon said profile map * * *, all in accordance with the regulations and requirements of the Village of Golden Valley." The contract goes on to provide:

"2.  Moving of Earth.

"Excavator will cause to be moved the earth from the higher portions to the areas that are low and spread thereon in a manner so as to conform as nearly as may be possible with the lines, grades and levels indicated in the foregoing exhibits.

"3.  Streets.

"Excavator will cut in all streets within the area, as per the village requirements, to sub-grade ready for gravel, and such portion of the streets bounding the area, not already constructed, as may be required by the village.

"Excavator will cut the avenue designated as Kentucky Avenue through the entire area from north to south, notwithstanding the plat which shows the said street as running only partly through the area.

"4.  Gravel.

"If any gravel should be found within the area, Excavator will place the said gravel in all of the roadways, to the extent available, in the upper two feet of said roadways and use it to bring the roads up to a sub-base.

\*     \*     \*     \*     \*

"8.  No materials shall be hauled in or from the site by the Excavator."

It appears from the contract and from the record that the parties felt that by leveling the hill and higher grounds sufficient material

would be available to complete the grading and construction of the roads and the filling in of the low places on the tract. The contractor proceeded with the work on October 27, 1958. It began at the north end of the tract and worked to the south. As the work proceeded, it leveled the hill, cut and graded the streets, and filled the low places in the lots to required levels. By November 14, 1958, when the contractor had completed the construction and leveling work on the north half of the tract, it ran out of dirt. At this point there is no dispute that the contractor did all of the excavation, construction, leveling, and filling in accordance with the contract so far as available material permitted.

There is a conflict in the evidence as to how the work should have been carried out. The landowners took the position that the contractor had breached the terms of the agreement and accordingly commenced an action against it for damages. The contractor thereafter instituted a lien foreclosure action against the landowners. The two actions were consolidated for trial. The landowners paid one-half of the balance of the contract price, or $4,575. The findings of the trial court recite:

"That said work as done did not complete the roads according to grade, but it was done in accordance with the contract as written, which was not entirely clear as to the requirements of defendant; that said work was done in accordance with the reasonable understanding thereof of defendant; that the work completed by said defendant Minnesota Road Builders, Inc. was reasonably worth said contract price, and the reasonable balance thereon is the sum of $4,575.00."

The trial court made its order for judgment in favor of the contractor in the sum of $4,575 and also ordered judgment with attorney's fees in favor of the contractor in the lien foreclosure proceedings.

At the outset it should be noted that issues of mistake or impossibility of performance are not involved. Those issues were neither alleged nor considered. It is the contention of the landowners that the contractor breached the agreement by failing to complete the construction of the streets in accordance with the regulations of the village

of Golden Valley. They contend that the completion of the streets in accordance with village regulations was the dominant object of the contract. They assert that, if the contractor had used all of the dirt removed from the higher places to build and grade the streets, the addition would have been accepted as meeting the regulations of the village. They assert that contrary to the agreement the contractor used a substantial part of the excavated material to fill in the lower places in the tract and thus placed itself in a position where it could not complete construction of the streets. They also argue that in the performance of its work the contractor knew or should have known that by using part of the material for fill there would not be sufficient material left to complete the construction of the streets.

The contractor on the other hand argues that it was not required by the terms of the contract to complete the construction of the streets first. It contends that it completed the grading, leveling, moving, and excavation of the material as it was required to do in accordance with the street grade plat and profile map which were a part of the contract. Although village regulations did not require the filling of low places, the contract did. The contractor points out that while it was engaged in the excavation of the higher ground and the leveling of the property on the north end, one or more of the landowners were present and made no objection to the way in which it was being done. It argues that it fulfilled its part of the contract, which was to grade, level, move, and excavate material in accordance with the grade plat and profile map.

There is a conflict in the evidence as to whether the contractor knew or should have known at the outset that the amount of material to be excavated would not be sufficient to complete the necessary grading and filling. It was the landowners' contention that the contractor represented there would be a sufficient amount. This was denied by the contractor.

We agree with the trial court that there is an ambiguity in the contract as to the method by which the contractor should carry out the work. This conclusion is supported by the testimony of the witness Sachs, attorney for the landowners. On cross-examination, when asked what was his intention as to whether the streets should be built first and the lots built later, he answered:

"I had no intention. I was absolutely unversed in these things. I had no intention with what should be done first or last."

We are of the view that the court in finding for the contractor properly concluded that at the time the contract was drawn no one intended that the contractor should be required to construct the streets first. It is not contended that the contractor's work was not performed in a workmanlike manner. The record is not clear as to whose duty it was to determine the amount of fill available and the amount necessary to complete the job. Because of ambiguity in the contract, the trial court was under the circumstances permitted to adopt the interpretation more favorable to the party who did not draft the instrument.[1]

Since the determinative issue in this case is essentially one of fact, our decision must be controlled by Wiseth v. Goodridge Farmers Elev. & Milling Co. 197 Minn. 261, 266 N. W. 850, which holds that where there is ambiguity in the contract and the construction depends upon extrinsic evidence as well as the writing there exists a question of fact for determination by a jury or a court sitting without a jury. While the construction of a contract and its legal effect are questions of law for the court, the terms of the contract if ambiguous are matters of fact to be determined in the same manner as other facts. Pike Rapids Power Co. v. Minneapolis, St. P. & S. S. M. R. Co. (8 Cir.) 99 F. (2d) 902; Floyd v. Ring Const. Corp. (8 Cir.) 165 F. (2d) 125, certiorari denied, 334 U. S. 838, 68 S. Ct. 1496, 92 L. ed. 1763.

We accordingly conclude that the contractor had a reasonable basis for interpreting the contract as it did and that the findings of fact, conclusions of law, and order for judgment should be affirmed.

Affirmed.

---

[1]Wick v. Murphy, 237 Minn. 447, 54 N. W. (2d) 805; Combined Ins. Co. v. Bode, 247 Minn. 458, 77 N. W. (2d) 533; Sitterley v. Gray Co. Inc. 199 Minn. 475, 272 N. W. 387; Lucas v. Ganley Bros. Inc. 166 Minn. 7, 206 N. W. 934.