John L. TURNER and Yvonne Turner, husband and wife, Plaintiffs,

v.

ALPHA PHI SORORITY HOUSE, Defendant,

C. F. HAGLIN & SONS CO., defendant and third party plaintiff, Respondent,

v.

SPANCRETE MIDWEST COMPANY, third party defendant, Appellant.

No. 48212.

Supreme Court of Minnesota.

Feb. 9, 1979.

Cousineau, McGuire, Shaughnessy & Anderson and Harold J. W. Sweet, Minneapolis, for appellant.

Van Eps & Gilmore; Wayne D. Tritbough and Duane E. Arndt, Minneapolis, for respondent.

Heard before PETERSON, YETKA, and STONE, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an appeal by third-party defendant Spancrete Midwest Co. from a denial of a post-trial motion, arising from a judgment in the third-party action in Hennepin County District Court on January 10, 1975, awarding full indemnification to third-party plaintiff C. F. Haglin & Sons Co. in accordance with their subcontract. We affirm.

The issues presented on this appeal are:

1. Where the determination of the meaning to be ascribed to the purchase order indemnification clause was erroneously submitted to the jury will this court review the issue as a question of law?

2. Did the contract between the parties require indemnification for common law negligence?

3. Is respondent foreclosed from receiving common law indemnification, absent a contractual provision mandating indemnity, where respondent settled a claim with an injured party without legal compulsion to do so and was subsequently found free of negligence as to the injured person?

Respondent C. F. Haglin & Sons (Haglin) had entered into a general contract to construct an addition to the Alpha Phi Sorority House near the University of Minnesota. Appellant Spancrete Midwest Company (Spancrete) submitted a bid to perform portions of the work and received a purchase order contract to become a subcontractor for the purpose of placing certain pre-cast concrete slabs into the structure.

At the time of the accident, the Spancrete crew consisted of John Turner, laborer; Sherman Sipe, foreman; Ronald Sol-seth, crane operator; and Daniel Flicker, crane oiler. The crane operator and oiler handled the booming up of pre-cast slabs to the roof where Sipe and Turner were working. Shortly before the accident, the laying of those slabs had been completed and the spaces between the slabs were ready to be filled with soft concrete or grout. For that purpose, it was necessary to relocate a grout pump which had been trucked to the site. In an effort to save time in the construction, Sipe decided to use a crane, rather than a truck, to relocate the grout pump. Spancrete's employees were aware that there were energized wires at the site, but took no steps to de-energize them or to cover the wires with a protective sleeve. As the pump was being swung into place, Flicker and Turner went to position it. The crane operator failed to keep an adequate lookout and the pump brushed against the wires. As a result, they started sparking and Turner was injured.

The main suit was commenced by Turner and his wife, plaintiffs, against the sorority, as property owner, and Haglin, the general contractor. Haglin tendered a defense to Spancrete, but it was rejected, and Haglin brought a third-party action. On October 7, 1974, during the course of the main action, a settlement was reached between plaintiffs and Haglin, and counsel for Spancrete stipulated that the settlement was fair and reasonable.

Trial of the third-party suit commenced on January 6, 1975, and a special verdict was rendered on January 10, 1975. Although there was evidence which suggested that Haglin may also have been at fault, the jury found, inter alia, that: Spancrete was 100 percent negligent; Turner had not assumed the risk of the situation; the purchase order was a binding subcontract between the parties because Spancrete had performed under it, even though Spancrete had not signed it; and the agreement required Spancrete to fully indemnify Haglin for the claim. The major issue on appeal is whether the indemnification clause, whereby Spancrete agreed to be liable for any damage due to its failure or neglect to

comply with Federal or state laws, municipal ordinances, or regulations, covers common law negligence.

■ 1. The threshold issue is whether this court should review the determination of the meaning of the indemnification clause as a question of fact or as a question of law. The construction and effect of a contract are questions of law for the court, but where there is ambiguity and construction depends upon extrinsic evidence and a writing, there is a question of fact for the jury. *Ring v. Minnesota Road Builders, Inc.*, 263 Minn. 391, 395, 116 N.W.2d 582, 585 (1962) (citing *Wiseth v. Goodridge Farmers Elevator & Milling Co.*, 197 Minn. 261, 266 N.W. 850 (1936)).

■ The trial court instructed the jury to determine, inter alia, whether Spancrete agreed to fully indemnify Haglin. The parties had not introduced any extrinsic evidence tending to show the meaning they attached to the indemnification clause; instead, they had made essentially conclusory statements to support their respective positions. Spancrete had pointed out that no proof of any violation of a state or Federal law, municipal ordinance, or regulation had been presented by Haglin, while Haglin had claimed that by being negligent Spancrete had violated the laws of Minnesota. Under the circumstances, it is clear that the issue involves a question of law. That the jury resolved the issue does not transform it into a question of fact. Furthermore, the court in effect did construe the meaning of the clause when it affirmed the jury's verdict that Spancrete must indemnify Haglin by denying appellant's motion to overrule the jury's verdict and appellant's post-trial motion to amend the trial court's findings of fact, conclusions of law, and order for judgment. Thus, the meaning of the indemnification clause is a question of law, and it will be reviewed as such.

■ 2. Spancrete argues that the term "State Laws" in the indemnification clause of the purchase order refers to state statutes and does not allow Haglin to recover for common law negligence. The indemnification provision reads as follows:

"The undersigned agrees to comply with all Federal and State Laws, and Municipal Ordinances and Regulations, of whatever nature required of the undersigned or its employees or agents in connection with the undersigned's business as a subcontractor of employer, and the undersigned shall be solely responsible for any damage which may be occasioned from the failure or neglect so to do, and the undersigned agrees to protect and indemnify the Contractor, the Architects, and the Owners from all liability or damage on account thereof."

The fundamental approach to construing contracts is to allow the intent of the parties to prevail. *Midway Center Associates v. Midway Center, Inc.*, 306 Minn. 352, 237 N.W.2d 76 (1975); *Koch v. Han-Shire Investments, Inc.*, 273 Minn. 155, 140 N.W.2d 55 (1966); *Downing v. Independent School District No. 9, Itasca County*, 207 Minn. 292, 291 N.W. 613 (1940). Where there are ambiguous terms or the intent is doubtful, it is axiomatic that the contract will be construed against the drafter. *Telex Corp. v. Balch*, 382 F.2d 211 (8 Cir. 1967) (applying Minnesota law); *Oskey Gasoline & Oil Co. v. OKC Refining Inc.*, 364 F.Supp. 1137 (D.Minn.1973); *Beattie v. Product Design & Engineering, Inc.*, 293 Minn. 139, 198 N.W.2d 139 (1972). No evidence was introduced as to the meaning which the parties attached to "State Laws" and, accordingly, the court instructed the jury consistently with this rule:

"The words of an instrument are to be taken most strongly against the party using them. If a contract is prepared by one of the parties and the language is ambiguous, it should be construed most strongly in favor of the opposing party— but read in the sense in which a prudent and reasonable person would have understood it."

Spancrete finds no fault with the instruction but asserts that the judge erred in not finding as a matter of law that "State Laws" does not embrace common law.

■ Although the rule quoted above is generally applied, this does not, as Spancrete seems to suggest, ineluctably lead to the conclusion that the drafter is to lose. Another applicable rule is that the language found in a contract is to be given its plain and ordinary meaning. *Employers Mutual Liability Insurance Co. v. Eagles Lodge*, 282 Minn. 477, 479, 165 N.W.2d 554, 556 (1969); *Bass v. Ring*, 215 Minn. 11, 15, 9 N.W.2d 234, 236 (1943). The trial court instructed the jury that "[w]ords are to be given their ordinary popular meaning unless it is obvious that the parties used them with a different meaning."

■ Evidence of the generally used definitions of "Laws" is found in Black's Law Dictionary, (4 ed.): "Rules promulgated by government as a means to an ordered society." This definition would include rules of law announced by courts. A second definition reads, "Session laws or statutes and not decisions of courts." Although the second definition would support Spancrete's argument, the first suggests, by its position, that it is the more commonly understood and ordinary meaning of the term.

Further support can be found in Federal decisional law. *In Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the United States Supreme Court ruled that in diversity cases Federal courts must apply state laws, whether declared by the state legislature or by the highest state court.

Most important, however, is the wording of the clause itself. That the appellant was "to comply with all * * * State Laws * · * * *of whatever nature* required of the undersigned in connection with [its] business as a subcontractor" (italics supplied) and that it will be solely responsible for the damages caused by the failure or negligence to do so suggest that Haglin intended to use broad language in order to receive as much protection as possible. The purpose of indemnification is to shield a party against losses caused by an indemnitor. Under these circumstances, it was proper for the jury and the trial court to have interpreted the term "State Laws" according to its plain and ordinary meaning so as to allow Haglin to recover against Spancrete for common law negligence.

Spancrete also contends that the term "State Laws" should be construed in light of the words with which it is associated. The common factor among "State Laws," "Federal Laws," and "Municipal Ordinances and Regulations," Spancrete argues, is that they are reduced to writing and, therefore, "State Laws" refers only to statutes promulgated in writing. Such an argument does not withstand scrutiny.

Although municipal ordinances must be in writing, 13A Dunnell, Dig. (3 ed.), § 6748, and the same appears true of regulations, whether state or Federal, this is not necessarily true for "Federal Laws." Appellant refers to *Erie Railroad v. Tompkins, supra*, to show that "there is no federal common law applicable to diversity cases." While the statement is true, *Erie* does not stand for the proposition that there is no Federal common law per se. The statement was used by the United States Supreme Court to prevent Federal courts from unconstitutionally assuming the power of the states by resorting to a general common law and to reduce the havoc created by forum shopping. Federal common law as a body of law apart from its application in *Erie* certainly does exist. Numerous cases under 28 U.S.C.A. § 1331, Federal question jurisdiction,[1] for example, confirm that there is Federal common law. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712, 721 (1972); *Trans-Bay Engineers and Builders, Inc. v. Hills*, 179 U.S.App.D.C. 184, 191, 551 F.2d 370, 377 (1976); *Stream Pollution Control Board v. United States Steel Corp.*, 512 F.2d 1036, 1039 (7 Cir. 1975); *Texas v. Pankey*, 441 F.2d 236, 240 (10 Cir. 1971). Cases such as

1. Section 1331 reads in part: "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States * * *."

these suggest that "laws" within the meaning of "arising under" includes both Federal common law and Federal statutory law.

 Finally, if the presence of a writing is a basic similarity among the terms in the indemnification clause, then state common law would also qualify. Judicial opinions are written and embody the requisites for common law actions, much as statutes, ordinances, and regulations are in writing and embody the mandates of the issuing authority. Therefore, the argument that a writing is the common feature of the various terms is not persuasive.[2]

3. It is also argued that absent a contractual provision mandating indemnity, Haglin may not recover under common law because the jury found that Haglin was not liable to the plaintiffs; consequently, the settlement was made without legal compulsion. Since we find that it was properly determined that the purchase order required Spancrete to indemnify Haglin, we need not address the issue presented here.

The decision of the trial court is affirmed.

OTIS, J., took no part in the consideration or decision of this case.

---

**2.** An evidentiary issue is presented by Haglin's reply in which it refers to the American Institute of Architects, Document A 201, " 'General Conditions of the Contract for Construction.' " This document states that the general contractor will indemnify the owner for damages caused by the negligence or omissions of the general or subcontractor. It is contended that Spancrete owes to Haglin the same obligations that Haglin owes to the owner, including indemnification for common law negligence. The issue is whether Haglin may refer to Document A 201 on appeal when it was not in evidence at trial.

The purpose of appellate review is to determine whether the trial court made an error and not to try the case de novo. *Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949). The trial court's record is conclusive on appeal and this court is limited to reviewing questions presented to and decided by the lower court, and to the trial court's record. Id. 399, 35 N.W.2d 550. It is a well-settled principle that issues not presented at trial cannot be raised on appeal. *AAMCO Indus., Inc. v. DeWolf*, Minn., 250 N.W.2d 835 (1977); *Bache & Co. v. Wahlgren*, 306 Minn. 238, 235 N.W.2d 839 (1975); *Christy v. Saliterman*, 288 Minn. 144, 179 N.W.2d 288 (1970). Thus, Document A 201 has not entered into our decision in this case.