Carol E. MOTTAZ, Respondent,

v.

Leo H. GADBOIS, individually and d.b.a. Sweeney's General Store and Saloon, Appellant.

No. C5-85-1387.

Court of Appeals of Minnesota.

April 15, 1986.

Review Denied June 13, 1986.

Roger A. Christianson, Patricia J. Hartmann, Christianson, Eckholm & Todd, St. Paul, for respondent.

John F. Bannigan, Jr., Lais, Bannigan & Kelly, P.A., St. Paul, for appellant.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

WOZNIAK, Judge.

Respondent Carol Mottaz brought an action against appellant Leo Gadbois to settle a contract dispute. Mottaz sought a formal accounting of the business relationship between the parties, a determination of her ownership interest in the business, and money damages reflecting the monetary value of that ownership interest. After a bench trial, the trial court ordered judgment for Mottaz for $56,252 plus interest.

Gadbois appeals from the trial court's judgment. We affirm as modified.

## FACTS

In early 1979, Gadbois purchased some real estate in St. Paul for $80,500. In addition to the land, the purchase included an existing building and an on-sale liquor license. Gadbois planned to open a bar known as Sweeney's General Store and Saloon on the premises.

Gadbois and Mottaz had a business and personal relationship for several years. Gadbois hired Mottaz to help renovate the building and get the business ready to open. Once the business opened in October 1979, Mottaz continued working for Gadbois as manager of the business. She retained that position until she resigned on December 31, 1982.

In August 1980, Gadbois drafted a contract granting Mottaz an ownership interest in Sweeney's. The document gave Mottaz a 15% interest in the business and its profits as of April 15, 1980, increased to 30% as of April 15, 1981, and increased to 45% as of April 15, 1982. The ownership interest did not include the real estate. In consideration for her interest, Mottaz was required to be working as Sweeney's manager on each of the three dates. As an additional condition, the contract stated that Gadbois must receive back his invested capital, plus 12% interest, before profits are split.

Following Mottaz's resignation at the end of 1982, she and Gadbois attempted to settle the accounts between them. When they were unable to agree on the amount owed, Mottaz brought this action against Gadbois. The trial court found that Mottaz met and satisfied the contract's performance conditions and that she was therefore entitled to recover damages under the terms of the contract.

In computing the damages owed, the trial court first used an average of the values that each party's expert witness testified to regarding the value of the business to find that the fair market value of the business was $196,000. The court awarded respondent 45% of that amount, or $88,200.

Second, the trial court found that the business had profits of $22,220 in 1980, $15,891 in 1981, and $29,808 in 1982. These figures were not disputed by the parties. The court also found that Gadbois' invested capital totaled $100,000. The court deducted 12% of appellant's invested capital, or $12,000, from each year's profits, and then multiplied the net results by 15% for 1980, by 30% for 1981, and by 45% for 1982. However, the trial court did not make any provisions for the return to Gadbois of the principal amount of his invested capital before distributing the profits. In this manner, the court concluded that Mottaz's total share of the profits was $10,714.

Finally, the court determined that Mottaz had received $48,822 over and above her stipulated salary while working at Sweeney's, and that Gadbois had received $6,160 over and above his stipulated compensation, for a net excess payment to Mottaz of $42,662. The trial court deducted this amount from the damages owed Mottaz. Accordingly, the trial court ordered judgment for Mottaz in the sum of $56,252 plus interest.

On appeal, Gadbois argues that the trial court erred by failing to provide for a return of his invested capital before distributing profits. He also argues that his invested capital and the interest owed him on that capital should not be deducted from the profits, but from the value of the business, thereby greatly reducing respondent's 45% share.

## ISSUE

Did the trial court err in its computation of the amount owed to respondent Mottaz?

## ANALYSIS

This court's scope of review is limited to determining whether the trial court's findings of fact are clearly erroneous. Minn.R. Civ.P. 52.01. The trial court's findings "may be held clearly erroneous, notwithstanding evidence to support such findings,

if the reviewing court is left with the definite and firm conviction that a mistake has been made." *In Re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976).

■ Gadbois alleges that the trial court erred in failing to give him credit for the return of his invested capital before computing the profits owed to respondent. We agree.

The trial court's findings correctly restate the disputed contract term:

The agreement further stated that before profits were to be split, the Defendant Gadbois was to receive back his invested capital plus 12% interest.

However, after first setting forth the net profits for each of the three years, the trial court only deducted an amount equaling 12% of Gadbois' invested capital of $100,000, and made no deduction for the principal amount of the invested capital itself.

The contract expressly provides for Gadbois to receive back both his invested capital and 12% interest on that amount before any profit splitting. When this return is made, Mottaz is not entitled to any profits for the years she worked at Sweeney's because she left the business so soon after its inception. Using the undisputed profit figures, the additional deduction of $100,000 from the profits results in a negative balance. The trial court clearly erred in failing to provide for a return of Gadbois' invested capital. Accordingly, Mottaz's damages must be reduced by the $10,714 in profits awarded to her.

■ Gadbois also argues that the trial court erred in deducting the interest owed him from the profits of the business. He argues that his invested capital and the interest are properly deducted from the value of the business. We cannot agree. The contract does not call for a return of Gadbois' invested capital before a division of the value of the business. The relevant contract term states only that: "[b]efore profits are split, I [Gadbois] receive back my invested capital plus 12 percent interest." The trial court correctly recognized that the computation of the amount of Mottaz's ownership interest is distinct from the computation of any profits owed. Moreover, if the contract's terms are in any way ambiguous, that ambiguity must be construed against Gadbois, who drafted the agreement. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979) (where there are ambiguous terms or the intent is doubtful, it is axiomatic that the contract will be construed against the drafter); *see also Beattie v. Product Design & Engineering, Inc.*, 293 Minn. 139, 147, 198 N.W.2d 139, 143 (1972).

■ Gadbois' final argument is that the trial court erred in offsetting the amount of excess compensation paid to Mottaz by the excess compensation paid to Gadbois before deducting the net excess from the damages owed Mottaz. While we find some merit in Gadbois' argument, his references to the record that contradict the trial court's finding are insufficient to compel a conclusion that the trial court's finding was clearly erroneous.

## DECISION

By failing to provide for a return of appellant's invested capital before the splitting of profits, the trial court clearly erred in its conclusion that respondent was owed $10,714 in profits. The trial court properly separated the computations for determining respondent's ownership interest from the computations of any profits owed respondent. The trial court did not clearly err in offsetting appellant's excess computations from respondent's excess computations before deducting the excess payments from damages owed respondent. The clerk of court is directed to reduce the judgment by the amount erroneously awarded to respondent for profits and to enter judgment in the amount of $45,538.

Affirmed as modified.