**Richard KROLLMAN, Appellant,**

v.

**CITY OF HIBBING, Respondent.**

**No. CX–96–344.**

Court of Appeals of Minnesota.

July 2, 1996.

Sean M. Quinn, Falsani, Balmer, Berglund & Peterson, Duluth, for Appellant.

Richard K. Sellman, Sellman Law Office, Hibbing, for Respondent.

Considered and decided by NORTON, P.J., TOUSSAINT, C.J., and STONE, J.*

## OPINION

NORTON, Judge.

Appellant, a retired firefighter, brought this action seeking an order directing respondent city to increase his pension according to the terms of a pension escalation clause and to reimburse him for the unpaid past-due pension increase. Based on undisputed facts, the parties brought cross-motions for summary judgment. The district court determined that the annual salary increase granted by the collective bargaining agreement does not constitute a "salary increase" under the pension escalation clause, because an increase in required hours of duty for firefighters resulted in a pro rata decrease in hourly compensation. This conclusion and denial of a pension increase does not comport with the terms of the collective bargaining agreement and pension plan contained in the record before us. We reverse summary

judgment for the city and remand for calculation of damages and grant of judgment to appellant.

## FACTS

Appellant Richard Krollman retired as a firefighter driver with respondent City of Hibbing. The bylaws of the Hibbing Fireman's Relief Association govern appellant's receipt of a pension and provide for automatic increases in appellant's pension as follows:

> The monthly service pension payable to such a member shall be increased from time to time by one-half of the amount of any salary increase granted after his retirement to an active member of the Fire Department of a rank equivalent to the rank held by him at the time of his retirement.

Hibbing Fireman's Relief Association Bylaws (Association Bylaws), Art. IX, § 2.

In 1992, the base salary for a firefighter driver was $29,436.12. Effective January 1, 1993, the city and the firefighters' local union entered into a new collective bargaining agreement that increased the base salary of firefighter drivers on January 1, 1993, to $31,791.01 per year. The new agreement also provided for an increase in required work hours.[1] Neither the Association Bylaws nor the collective bargaining agreement define the term "salary."

The city refused to increase Krollman's pension even though the base pay for firefighter drivers had increased. Krollman

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The old collective bargaining agreement defines "normal hours of work" as

    > an average of forty-two (42) hours per week as computed over a four-week period; with overtime pay at time and one-half (1–1/2) for all hours worked in excess of 168 hours in the four-week period.

    Agreement between the City Council of Hibbing, Minnesota and the International Association of Firefighters Local Union # 173, January 1, 1991 through December 31, 1992 (Old Agreement), Art. III. The new agreement, beginning January 1, 1993, redefines "normal hours of work" to be

    > based on scheduled twenty-four (24) hour shifts using a three platoon system, with each

platoon scheduled to work eight (8) twenty-four (24) hour shifts in a twenty-four (24) day cycle. Provided, however, each employee shall be scheduled for and shall take one twelve (12) hour unpaid leave period during each twenty-four (24) day scheduling cycle. Overtime shall be paid for all hours worked beyond the employee's regularly scheduled twenty-four (24) hour shift. For 1993 the employee's overtime rate shall be the same as the employee's overtime rate as of December 31, 1992. For 1994 the employee's overtime rate shall be equal to 1.02 times the 1993 overtime rate.

Agreement between the City Council of Hibbing, Minnesota and the International Association of Firefighters Local Union # 173, January 1, 1993 through December 31, 1994 (New Agreement), Art. 3.

then brought this action against the city. The parties brought cross-motions for summary judgment. The district court granted summary judgment to the city, noting that, although the new collective bargaining agreement provided for an increase in annual base pay as noted in the "wage and salary schedule," the agreement required firefighter drivers to work longer hours. The district court determined that, because this constituted an actual decrease in pay when prorated on an hourly basis, no "salary increase" had occurred within the meaning of the pension escalation clause.

## ISSUE

Did the increase in firefighter base pay constitute a "salary increase" under the terms of the pension escalation clause even though a simultaneous increase in required hours of service decreased the pro rata hourly pay rate?

## ANALYSIS

On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). Where, as here, no material facts are in dispute, the appellate court need not defer to the district court's application of the law. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989).

This case rests on the interpretation of the term "any salary increase" contained in the pension escalation clause of the Association Bylaws. Interpretation of contract language is a question of law for the court to determine. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979).

Neither the Association Bylaws nor the collective bargaining agreement defines the term "salary." *Black's Law Dictionary* defines "salary" as:

A reward or recompense for services performed. In a more limited sense, a fixed periodical compensation paid for services rendered. A stated compensation paid periodically as by the year, month, or other fixed period, in contrast to wages which are normally based on an hourly rate.

*Black's Law Dictionary* 1337 (6th ed.1990). The *American Heritage Dictionary* defines "salary" as "[f]ixed compensation for services, paid to person on a regular basis." The *American Heritage Dictionary of the English Language* 1591 (3rd ed.1992). The *Oxford English Dictionary* defines "salary" as a "[f]ixed payment made periodically to a person as compensation for regular work." *II The Compact Edition of the Oxford English Dictionary* 2624 (1987).

Here, the collective bargaining agreement sets forth an annual salary for firefighter drivers, to be paid on a bi-weekly basis. New Agreement, Art. 15 § 6 and Appendix. This certainly constitutes "fixed payment made periodically," and thus satisfies the above definition of "salary." *II The Compact Edition of the Oxford English Dictionary* 2624 (1987). The city contends, however, that a pro rata hourly wage rate should apply here and argues that the trial court correctly interpreted the salary provision as meaning "the base rate of pay for regular hours worked during a given unit of time." The city claims that the unit measure of time is hourly, not bi-weekly, monthly, or yearly. The city contends that a pro rata hourly rate should apply here because, when Krollman was an active employee, Krollman was never required to work more than 42 hours per week, whereas the new contract requires firefighter drivers to work 52.5 hours per week before they can receive overtime pay. The district court adopted this same view.

The city's argument is unpersuasive. First, the pension escalation clause provides for escalation for "any salary increase," not "any *hourly* salary increase," as the city would have it. Association Bylaws, Art. IX, § 2. The collective bargaining agreement does not list an hourly rate of pay. Instead, the agreement provides for an annual base salary, paid on a bi-weekly basis. The agreement only refers to hourly rate of pay for overtime worked in excess of the "normal hours of work." New Agreement, Art. 3. Further, we note that the nature of the firefighters' work here is not measurable by the hour, but rather as the need arises dur-

ing their scheduled 24–hour shifts. Presumably the firefighters are not exclusively and regularly fighting fires, maintaining the equipment, and providing other firefighter services during their entire 24–hour shift, but instead the city is paying them to be rested and ready for service and to provide firefighter services as needed during a 24–hour shift. The record contains nothing to indicate an increase in compensated work.

Finally, the pension escalation clause and other parts of the pension plan contained in the record before us do not indicate that a pension increase is dependent on a comparison of a current employee's required hours of work and those required of the retiree prior to retirement. The escalation clause merely requires that the pension increase be based on the salary of an active member "of a rank equivalent to the rank held by [the retiree] at the time of his retirement." Association By-laws, Art. IX, § 2. There is no dispute here that Krollman's rank of firefighter driver at retirement was "equivalent" to the present rank of firefighter driver.

In conclusion, the broad terms of the pension escalation clause compel an interpretation that pension escalation must automatically occur when there has been *any* increase in salary, defined as a "periodical compensation paid for services rendered." *Black's Law Dictionary* 1337 (6th ed.1990) (defining "salary"). Here, the listed annual compensation of firefighters, paid bi-weekly, for "normal hours of work" meets this definition of salary. The collective bargaining agreement grants an annual base salary that is greater than the prior annual base salary. Accordingly, under the bylaws, the pension must increase.

### DECISION

The district court erred when it determined that the increase in annual base pay for active firefighter drivers did not constitute a "salary increase" under the terms of the pension escalation clause that governs automatic pension increases for appellant, a retired firefighter driver. The district court erred when it denied appellant's motion for summary judgment, and it erred when it granted summary judgment to the city. We reverse and remand, with instruction that the district court grant judgment to appellant after calculating his damages.

**Reversed and remanded.**