Larry HANSON, as Co–Trustee for the Heirs and Next of Kin of Jenna Hegstrom, Deceased, et al., Appellants,

v.

STATE FARM INSURANCE COMPANY, Defendant,

and

Jodi Madsen, as Co–Trustee for the Heirs and Next of Kin of Jenna Hegstrom, Deceased, Respondent.

No. CX–02–1620.

Court of Appeals of Minnesota.

May 27, 2003.

John E. Mack, Mack & Daby, P.A., New London, MN, for appellant.

Michael Fargione, Hauer, Fargione, Love, Landy & McEllistrem, P.A., Minneapolis, MN, for respondent.

Considered and decided by MINGE, Presiding Judge, KALITOWSKI, Judge, and PORITSKY, Judge.*

## OPINION

MINGE, Judge.

Appellants argue that the district court erred when it determined that a one-third contingent fee arrangement that the trustee entered into before his appointment did not apply to appellant law firm's representation after the trustee's appointment. Because we conclude that the trustee's authority related back to his representative actions prior to his appointment, we hold that the one-third contingent fee agreement is valid, and we reverse.

## FACTS

This case concerns attorney fees in a lawsuit filed over the death of 9–year–old Jenna Hegstrom, who was killed in a car accident. Hegstrom's mother had previously died of cancer, and her father was in jail. On January 11, 2002, Hegstrom's maternal grandfather, appellant Larry Hanson, retained the appellant law firm of Mack & Daby, P.A., and sought to be appointed trustee for Hegstrom's next of kin. In retaining Mack & Daby, Hanson signed a contingent fee agreement whereby Mack & Daby would receive one-third of any amount collected in Hanson's "ac-

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

tion against the automobile insurers of the vehicles involved in the death" of Hegstrom. The next day, January 12, 2000, Hanson was appointed trustee for Hegstrom's next of kin.

On January 18, 2000, Hanson sued Rachel O'Brien for the wrongful death of Jenna Hegstrom. On March 24, 2000, Hanson requested court approval of a proposed settlement whereby O'Brien would pay $30,000 to Hegstrom's next of kin. At that point in the proceeding, respondent Jodi Madsen, on behalf of Hegstrom's paternal relatives, objected to the proposed settlement. Madsen also brought a motion to remove Hanson as trustee. Madsen had hired the law firm of Hauer, Fargione, Love, Landy & McEllistrem, P.A. (the Hauer law firm) to handle this removal request.

Before the objections were decided by the district court, trustee Hanson and Madsen agreed to a partial settlement. Under the settlement, Madsen dropped the objection to Hanson as trustee. Hanson and Madsen agreed to serve as co-trustees with the understanding that they would move forward with a claim against State Farm, the underinsured motorist (UIM) carrier. Madsen and Hanson also agreed that the law firms they had each retained would serve as co-counsel in making that claim. On October 23, 2000, Madsen and Hanson were appointed co-trustees.

On October 25, 2000, Madsen signed a contingent fee agreement with the Hauer law firm. The agreement provided that Madsen would pay 15% of any amount recovered if the matter was settled before trial and that Madsen would pay 20% of any amount recovered if the matter was tried to a conclusion. Madsen signed the agreement as "Trustee for the heirs and next of kin of Jenna Hegstrom." Hanson

was neither informed of, nor did he sign, the agreement.

Hanson and Madsen pursued the UIM claim in Dakota County, and a trial was held on March 19 and 20, 2002. Both law firms participated in the trial, and the jury returned a verdict of $223,308.84.

After the verdict in the UIM claim, Hanson sought distribution of the $30,000 wrongful death settlement. The proposed distribution included a distribution of $10,000 to Mack & Daby pursuant to the one-third contingent fee agreement between Mack & Daby and Hanson. Although Madsen objected to the proposed distribution, on June 2, 2002, the Kandiyohi County district court approved distribution and awarded Mack & Daby $10,000 in attorney fees.

In June 2002, Mack & Daby sought distribution of the proceeds of the UIM lawsuit. Mack & Daby proposed a distribution whereby it would receive one-sixth of the proceeds, which represented half of its one-third contingent fee contracted for between Hanson and Mack & Daby. Madsen objected to the distribution, and on August 30, 2002, a Dakota County district court determined that the contingent fee agreement between Madsen and the Hauer law firm governed and that the law firms were entitled to a total of 20% of the proceeds, with each law firm receiving 10% of the proceeds.

Hanson and Mack & Daby appeal from the Dakota County order awarding them 10% of the proceeds from the UIM lawsuit and contend that the one-third contingent fee agreement governs the distribution of their proceeds from the UIM lawsuit. No appeal has been taken from the order directing payment of the 10% contingent fee to the Hauer firm.

## ISSUE

Did the district court err by determining that the Mack & Daby contingent fee agreement was not valid as to the UIM lawsuit?

## ANALYSIS

■ The issue on appeal is whether the one-third contingent fee agreement is valid as to the proceeds of the UIM lawsuit. Contingent fee agreements are treated as any other contract. *Holt v. Swenson*, 252 Minn. 510, 514–15, 90 N.W.2d 724, 728 (1958). "The construction and effect of a contract are questions of law for the court." *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979). A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Accordingly, our standard of review is de novo.

■ The Dakota County district court found that the one-third contingent fee agreement was not binding on the heirs and next of kin because it was signed before Hanson was a trustee. Thus, the issue in this case is not whether the contingent fee agreement is unreasonable; the issue is whether appellant Hanson could bind the heirs and next of kin by signing a contingent fee agreement before he was appointed trustee of the heirs and next of kin. Appellants argue that though Hanson signed the one-third contingent fee agreement before he was appointed trustee, as soon as he was appointed trustee, his authority related back to and validated the one-third contingent fee agreement.

The UIM lawsuit in this case was brought under the wrongful death statute, which is found at Minn.Stat. § 573.02 (2002). The title of Chapter 573 of the Minnesota Statutes is "Personal Representa-

tives, Heirs; Actions." Minn.Stat. Ch. 573 (2002). In *Beck v. Groe,* the court described a trustee as "acting as the personal representative by virtue of the provisions of § 573.02, the wrongful death act." *Beck v. Groe,* 245 Minn. 28, 33, 70 N.W.2d 886, 891 (1955); *see also Hachmann v. Mayo Clinic,* 150 F.Supp. 468, 469 (D.Minn.1957) (referring to Minn.Stat. § 573.02 and noting "[t]he statute creates an action, arising upon death, which may be maintained by the personal representative of the deceased"). Thus, the Minnesota Supreme Court has characterized the trustee in a wrongful death suit as a personal representative.

■ The relation back doctrine applies to the authority of a personal representative. *In re Estate of Gerhardt,* 369 N.W.2d 335, 336 (Minn.App.1985). In *Gerhardt,* this court noted:

> The trial court specifically found that Moore was appointed as personal representative at a hearing on July 5, 1983, and the record supports that finding. Thus, Moore's duties and powers commenced on that date. Even if her appointment were not effective until she filed her acceptance, *her power to perform acts which benefit the estate would relate back to the time of the decedent's death.*

*Id.* (emphasis added) (citations omitted).

■ Because a trustee in a wrongful death suit is essentially a personal representative, the authority of the trustee, like the authority of a personal representative, relates back. Thus, subject to court approval for reasonableness and absent some intervening circumstance, Hanson's authority related back; the one-third contingent fee agreement became binding on the heirs and next of kin as soon as Hanson was appointed trustee.

Appellant law firm recognized that with two law firms involved, the claims for fees could be unreasonable. Indeed, if a one-third contingent fee were paid to Mack & Daby and a 20% contingent fee to Hauer law firm, over 50% of the award would go to pay attorneys; such a result would be overreaching. *See Holt*, 252 Minn. at 514–15, 90 N.W.2d at 728 (finding that contingent fee agreements are not valid where there is evidence of overreaching). Attorney John Mack testified that he had talked with the Hauer firm about this issue as follows:

> [I]t was suggested and agreed to that both of us serve as co-counsel on this matter, and that we share attorney's fees in the UIM case fifty/fifty.

Mack testified that in the same conversation, the Hauer law firm informed him that it had signed a one-third contingent fee agreement with Madsen. Thus, when Mack & Daby agreed to serve as co-counsel, its intention was to split "fifty/fifty" a one-third contingent fee. Because the one-third contingent fee agreement was valid, and because Mack & Daby agreed to split the contingent fee "fifty/fifty," Mack & Daby is entitled to one-sixth of the award from the UIM lawsuit.

Neither of the parties challenge the validity of the Hauer law firm's contingent fee agreement, nor do they challenge the district court determination that the Hauer law firm is entitled to 10% of the UIM award. Also, no one challenged the reasonableness of either fee arrangement. Accordingly, the ruling of the district court approving the Hauer fee is not affected by this appeal and the one-third fee arrangement for the Mack & Daby law firm is considered reasonable. Since the district court was not asked to address and did not decide if each law firm's fee was to be paid by the side of the family represented by the trustee who hired that law firm, we do not finally decide that question. However, we do observe that such an allocation of fees for payment from the proceeds of the respective sides of the family appears to be the fairer outcome in this proceeding. We remand this matter for the district court to calculate fees and for further action in accordance with this opinion.

Appellants argue that respondent was collaterally estopped from arguing that the one-third contingent fee agreement was not valid because the Kandiyohi County district court had already enforced that agreement. Because we reverse the Dakota County district court decision, we do not address appellants' collateral estoppel argument.

**DECISION**

The district court erred when it determined that because appellant Hanson signed the one-third contingent fee agreement with the Mack & Daby law firm before he was appointed trustee, the fee agreement did not apply in the UIM lawsuit. The fees of the Hauer firm and the further allocation of fees are not before this court.

**Reversed and remanded.**