LILLEHAUG, Justice.
*689 This case arises out of an objection to a jury instruction regarding the interpretation of contracts. The district court instructed the jury to determine whether two contracts were ambiguous, and if so, to both "determine the intent of the parties" and construe ambiguous terms against the drafter. The court of appeals decided that this jury instruction materially misstated the law and remanded for a new trial. We agree and affirm the court of appeals.
FACTS
Appellant is Staffing Specifix, Inc. ("Staffing"), a temporary staffing agency based in Florida. The agency is owned by Dr. Margarita Lermo. Her son, Alex Fernandez, is the CEO. Respondent TempWorks Management Services, Inc. ("TMS") contracts with smaller agencies, such as Staffing, to provide payroll and other services.[1] TMS acts as the employer of record, while the smaller company grows its business.
In 2012, Staffing and TMS executed a contract, drafted by TMS-the "TMS Services Agreement." Under the contract, TMS became the employer of record for Staffing's temporary workers while Staffing interacted with client companies that contracted for temporary workers. TMS became the owner of all "Accounts Receivable" from Staffing's clients and processed payroll for the temporary workers hired by Staffing. Staffing earned a "Commission" under the contract that was "equal to the gross amount of accounts receivable" less any fees owed to TMS. Among those fees were "Management Fees," which included, relevant to this appeal, "the actual total cost of payroll or fees" for the temporary workers. "[A]ctual total cost of payroll" was not defined in the contract. The contract also specified that TMS would "maintain, administer, and pay for workers' compensation insurance."
The initial contract term between Staffing and TMS was for 18 months, with automatic renewals in 12-month increments, "unless sooner terminated under Article 11, or the mutual, written consent of the parties." Article 11 of the contract set out the requirements for termination. Section 11.1 stated: "Subject to the below exceptions, [Staffing] may only terminate this Agreement with the written consent" of TMS. Section 11.2 stated that Staffing could terminate the contract any time after the first calendar year by "buy out"-"a payment equal to two times the total Management Fees which [TMS] earned in the immediately-preceding year, less actual costs of payroll."
On May 29, 2014, Staffing sent an email notifying TMS of its intent not to renew the contract upon the expiration of the initial 18-month contract term. The notice generated a dispute as to whether the "buy out" provision of the contract had been triggered. The parties negotiated a "compromise" whereby Staffing would pay TMS $65,000 "in lieu of a buyout fee." The compromise was never reduced to writing and signed, but TMS subtracted $65,000 *690 from the balance of carry-forward funds TMS owed to Staffing.[2]
Eventually the parties negotiated a written contract, called the "Tricom Agreement," to terminate the TMS Services Agreement. Under the new contract, a company called Tricom would pay TMS a "[f]inal [p]ayoff [a]mount" of about $1.2 million, which represented "90% of the total aging balance of TMS' accounts receivable plus fees earned by TMS." The Tricom Agreement did not end the dispute between the parties because of disagreement over the meaning of a material term: "fees earned by TMS." TMS interpreted the phrase to include a buyout fee of approximately $280,000, minus the $65,000 it had already withheld from Staffing's carry-forward balance. TMS considered the $65,000 amount to be factored into the "final payoff amount" in the Tricom Agreement. Staffing, by contrast, did not consider the amount agreed to in the Tricom Agreement to include any "buyout," and maintained that TMS still owed it $65,000.
Staffing then sued TMS for, among other things, breach of contract. Central to the dispute was whether the "final payoff amount" stated in the Tricom Agreement accurately and completely reflected the balance of funds owed to Staffing and TMS, respectively. Specifically, the parties disputed (1) whether TMS had improperly "withheld" as "management fees" its workers' compensation costs; and (2) whether Staffing owed TMS a buyout fee.
On a motion before trial, the district court ruled that the TMS Services Agreement was ambiguous, and that parol evidence would be admitted "to explain the intent of the parties." The court did not specify which provisions were ambiguous.
At trial, the parties offered conflicting evidence on the workers' compensation issue. Alex Fernandez testified that Staffing entered into the TMS Services Agreement with the initial understanding that Staffing was responsible for workers' compensation costs, but that he later believed otherwise based on the contract terms. TMS's general counsel testified that the "total cost of payroll" used to calculate the management fees did not specifically mention workers' compensation costs because the term was intended to be "purposefully expansive."
With respect to whether the Tricom Agreement included accounting for a buyout fee, TMS introduced an email between David Dourgarian, TMS's CEO, and an attorney for Tricom. The email detailed the accounting for the $1.2 million figure in the Tricom Agreement as follows:
Factoring Aging 1,354,800.38 Buyout Fee 280,370 Less Buyout Fee Collected (65,000) Carry Forward (171,126.47) AR Reserve (177,076.09) NFE Balance $1,221,967.82
Staffing objected to the introduction of the email. Staffing argued that the district *691 court had not determined that the Tricom Agreement was ambiguous, and therefore the email was inadmissible parol evidence. The court ruled that the "fees earned" language in the Tricom Agreement was ambiguous and admitted the email.
Staffing's breach-of-contract claims were submitted to the jury. The district court instructed the jury as follows:
Contract-Meaning
If you find the contract is ambiguous, you should determine the intent of the parties.
When contract language is reasonably susceptible to more than one interpretation, the ambiguous contract terms are to be construed against the drafter.
Both during and after trial, TMS objected to this instruction, arguing that the instruction erroneously directed the jury to simultaneously determine the intent of the parties and construe ambiguous terms against the drafter. The district court overruled the objection of TMS and denied its later motion for a new trial.
The jury found for Staffing on its breach-of-contract claim and awarded damages of $451,732.77. Staffing appealed the dismissal of certain claims and denials of certain motions that are not relevant to this appeal. TMS cross-appealed, arguing again that the district court improperly instructed the jury on contract meaning.
The court of appeals reversed the district court and remanded for a new trial. The court of appeals held that the district court erroneously instructed the jury both to "determine the intent of the parties" and to construe ambiguous terms against the drafter. Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc. , 896 N.W.2d 115, 131 (Minn. App. 2017). The court distinguished between "contracts of adhesion"-"[a] standard form contract prepared by one party, to be signed by another party in a weaker position"-and non-adhesion contracts. Id. at 130 (quoting Black's Law Dictionary 390 (10th ed. 2014) ). The court determined that the canon of contra proferentem -"a doctrine that ambiguities in a contract are to be construed unfavorably against the drafter"-"is often applied in cases involving contracts of adhesion and is a recognition of the disparity in bargaining power that may exist between parties." Id . Because the TMS Services Agreement and the Tricom Agreement were not contracts of adhesion, the court held that the canon of contra proferentem was to be applied "as a rule of last resort," "only after the evidence fails to reveal the mutual intent of the parties." Id. at 131.[3]
The court determined that TMS was substantially prejudiced by the erroneous instruction. Id . at 132. Accordingly, the court remanded for a new trial on Staffing's breach-of-contract claims. Id.
We granted Staffing's petition for review.
ANALYSIS
The issue before us is whether the district court properly instructed the jury on "contract meaning," or how to interpret contracts. We review a challenge to jury instructions for an abuse of discretion. Hilligoss v. Cargill, Inc. , 649 N.W.2d 142, 147 (Minn. 2002). If the challenged instructions materially misstate the law resulting in prejudice to the complaining party, we will remand for a new trial.
*692 Engquist v. Loyas , 803 N.W.2d 400, 403, 407 (Minn. 2011). Whether the district court's jury instruction materially misstates the law is a legal question that we review de novo. See State v. Schoenrock , 899 N.W.2d 462, 466 (Minn. 2017) (reviewing a jury instruction interpreting a criminal statute); Stewart v. Koenig , 783 N.W.2d 164, 166 (Minn. 2010) (reviewing a jury instruction interpreting an administrative rule).
Here, we address two issues regarding the district court's jury instruction-whether the district court erroneously instructed the jury to determine if the contracts were ambiguous and whether the district court erroneously instructed the jury to both determine the intent of the parties and construe ambiguous terms against the drafter. Neither TMS nor Staffing sought review in the court of appeals regarding the portion of the "Contract-Meaning" jury instruction that told the jury to determine whether the contracts were ambiguous. But, the court of appeals addressed this separate legal issue. Ordinarily, we would not consider an issue not decided by the district court. See Thiele v. Stich , 425 N.W.2d 580, 582 (Minn. 1988). Nevertheless, because we are affirming the decision of the court of appeals that another portion of the "Contract-Meaning" instruction was erroneous-resulting in a new trial-we have decided to address the issue in the interest of judicial economy.
I.
"[T]he primary goal of contract interpretation is to determine and enforce the intent of the parties." Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc. , 666 N.W.2d 320, 323 (Minn. 2003). Interpretation of unambiguous contracts is a question of law for the court, as is the determination that a contract is ambiguous. Denelsbeck v. Wells Fargo & Co. , 666 N.W.2d 339, 346 (Minn. 2003). The terms of a contract are ambiguous if they are susceptible to more than one reasonable interpretation. Id. A contract's terms are not ambiguous simply because the parties' interpretations differ. See id. at 347 (concluding that the parties' dispute was due to conflicting interpretations of a contract's requirements, rather than the contract being ambiguous).
If the district court determines that a contract is ambiguous, it may admit parol, or extrinsic, evidence of the parties' intent. Flynn v. Sawyer , 272 N.W.2d 904, 908 (Minn. 1978) ; Wick v. Murphy , 237 Minn. 447, 54 N.W.2d 805, 808-09 (1952) ; Leslie v. Minneapolis Teachers Ret. Fund Ass'n. , 218 Minn. 369, 16 N.W.2d 313, 315 (1944). When extrinsic evidence has been admitted, the interpretation of ambiguous terms becomes a question of fact for the jury. Turner v. Alpha Phi Sorority House , 276 N.W.2d 63, 66 (Minn. 1979) ; Noreen v. Park Const. Co. , 255 Minn. 187, 96 N.W.2d 33, 36 (1959).
Here, the district court, having held before trial that the TMS Services Agreement was ambiguous, admitted parol evidence to explain the parties' intent. Later, during trial, the district court held that the Tricom Agreement was ambiguous, and admitted additional parol evidence. When the district court instructed the jury on contract meaning, however, the district court directed the jury to determine whether the contracts at issue were ambiguous, rather than instructing the jury that the contracts were ambiguous. Because determining whether contract terms are ambiguous is unquestionably the role of the court, and not of the jury, we agree with the court of appeals that the district court erred in this portion of the jury instructions.
*693 II.
Having decided that the district court erred in leaving the issue of ambiguity to the jury, we also conclude that the district court erred in instructing the jury how to interpret ambiguous contract terms. It is necessary to decide this issue because neither party disputes that the contracts are ambiguous as to which party is responsible for workers' compensation costs and whether Staffing owed TMS a buyout fee. Neither party challenges the district court's admission of parol evidence "to explain the intent of the parties." And, neither party contends that the contracts were the products of adhesion or grossly disproportionate bargaining power.
The rule that ambiguous contract terms are to be construed against the drafter has been called the canon of "contra proferentem ." The rule is commonly (but not exclusively) applied in the insurance context. See Midwest Family Mut. Ins. Co. v. Wolters , 831 N.W.2d 628, 636 (Minn. 2013) ("Any ambiguity is resolved in favor of the insured[.]" (quoting Prahm v. Rupp Const. Co. , 277 N.W.2d 389, 390 (Minn. 1979) ) ); Travelers Indem. Co. v. Bloomington Steel & Supply Co. , 718 N.W.2d 888, 895 (Minn. 2006) (discussing the disparity in bargaining power in the insurance context); Rusthoven v. Commercial Standard Ins. Co. , 387 N.W.2d 642, 645 (Minn. 1986) ("One of the ancient principles of contract law is that an ambiguous contract, especially an adhesion contract, is construed against the drafter."); Lowry v. Kneeland , 263 Minn. 537, 117 N.W.2d 207, 210 (1962) ("It is elementary that if there is doubt as to [a contract's] meaning it must be construed most strongly against the one who chose the language in drafting the instrument.").
In cases involving parties of relatively equal sophistication and bargaining power, we have always treated contra proferentem as a supporting-not deciding-rationale, even if we have not said explicitly that extrinsic evidence must be considered before ambiguous terms are construed against the drafter. Three cases are illustrative.
First, in Turner v. Alpha Phi Sorority House , we considered an ambiguous indemnification clause of a construction subcontract. 276 N.W.2d 63, 65 (Minn. 1979). We specifically noted that the parties had not submitted any extrinsic evidence of the parties' intent. Id. at 66. "[A]ccordingly," we determined that it was appropriate for the district court to instruct the jury to construe any ambiguous terms against the drafter. Id. Fundamentally, we said, the goal of contract interpretation is to "allow the intent of the parties to prevail." Id. "Where there are ambiguous terms or the intent is doubtful , it is axiomatic that the contract will be construed against the drafter." Id. (emphasis added).[4]
Second, in ICC Leasing Corp. v. Midwestern Machinery Co. , we addressed an equipment leasing agreement between commercial parties. 257 N.W.2d 551, 552 (Minn. 1977). After extrinsic evidence had been admitted in the case, "the trial court found that ... Midwestern had failed to *694 prove by a fair preponderance of the evidence ... the meaning of the phrase in question." Id. at 555. As a result, "all doubts or ambiguities" were "resolved against [the defendant] as the drafter of the agreement." Id.
Third, in Wick v. Murphy , 237 Minn. 447, 54 N.W.2d 805 (1952), we credited the trial court's conclusion that evidence submitted at trial supported the nondrafter's interpretation of an ambiguous contract. "Moreover," we added:
[I]t is a well-established rule of construction that where a contract is open to two interpretations, the one more favorable to the party who did not draft the instrument should be adopted in the absence of a clear showing that a contrary meaning was intended by the parties at the time of execution.
Id. at 809 (emphasis added).
These cases demonstrate that we have applied the rule of contra proferentem only after an attempt is made to determine the parties' intent behind an ambiguous term, using extrinsic evidence if available. Consistent with ICC Leasing Corp. , the appropriate burden of proof on intent is a preponderance of the evidence. See 257 N.W.2d at 555. Only if a preponderance of the evidence does not prove the parties' intent should the jury construe ambiguous terms against the drafter.
Accordingly, the jury instruction in this case materially misstated the law twice. First, it erroneously directed the jury to determine whether the contracts were ambiguous. Second, it erroneously directed the jury to both "determine the intent of the parties" and construe ambiguous terms against the drafter without specifying which task must be completed first.
Given that the instruction was erroneous, we must determine whether the error prejudiced the complaining party, TMS. "A jury instruction is prejudicial if a more accurate instruction would have changed the outcome in the case." George v. Estate of Baker , 724 N.W.2d 1, 10 (Minn. 2006). On erroneous instructions, a tie goes to the objector. See id. ("If the effect of an erroneous jury instruction cannot be determined, we will give the complainant the benefit of the doubt by granting a new trial.")
The court of appeals determined that "[c]harging the jury with prioritized instructions ... would likely have changed the trial's result" because "the [extrinsic] evidence on the intent of the parties regarding workers' compensation costs was strong." Staffing Specifix , 896 N.W.2d at 133. We do not agree that the extrinsic evidence was so clear cut. Although Fernandez initially believed that Staffing was responsible for workers' compensation costs, he also made clear that his view changed as soon as he understood the terms of the TMS Services Agreement.
Further, there was little evidence of the parties' mutual intent regarding the buyout fee. The only evidence admitted regarding the number calculated in the Tricom Agreement (the email between Dourgarian and a representative of Tricom ) clearly demonstrates that the number accounted for a buyout fee. There was scant evidence, however, that Staffing understood or agreed to this calculation.
It is not clear that the erroneous jury instruction prejudiced TMS. By the same token, we cannot say it did not. Because our precedent gives the benefit of the doubt to the complaining party, we must affirm the remand of the court of appeals for a new trial.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

Respondents are TempWorks; TempWorks Software, Inc.; ARA, Inc.; David Dourgarian, CEO and owner of TempWorks; Gregg Dourgarian, founder and chairman of TempWorks Software, Inc., and founder, chairman, and CEO of ARA, Inc.; John Reid, General Counsel for TempWorks, TempWorks Software, Inc., and ARA, Inc.; Mari Kautzman, COO of TempWorks Software, Inc.; and Doug Greene, a manager with TempWorks.

At some point during the relationship, Alex Fernandez requested that commissions to Staffing not be paid regularly. Thus, TMS would "hold onto" commissions owed to Staffing and issue disbursements to Staffing as requested by Fernandez. TMS maintained this "carry-forward balance" in an account owned by TMS.

Further, although it was not the basis for TMS's objection to the jury instruction, nor was it briefed by the parties on appeal, the court of appeals held that the district court made an additional error: failing to instruct the jury which provisions of the two contracts were ambiguous as a matter of law. Id. at 129-30.

The parties here dispute the meaning of "or" in this sentence of Turner . See 276 N.W.2d at 66. We now clarify that, for the parties' intent behind contract terms to be doubtful, those terms must also be ambiguous. See Carl Bolander & Sons, Inc. v. United Stockyards Corp. , 298 Minn. 428, 215 N.W.2d 473, 476 (1974) ("Where the words of a written contract are plain and unambiguous, its meaning should be determined in accordance with its plainly expressed intent."). Accordingly, Turner means that, where terms are ambiguous and intent remains doubtful due to the absence of extrinsic evidence, the canon of contra proferentem applies.