# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-0128

In the Matter of the Civil Commitment of: Anthony Blake Swope.

**Filed September 16, 2024**
**Affirmed in part, reversed in part, and remanded**
**Ross, Judge**
**Concurring specially, Cleary, Judge**∗

Scott County District Court
File No. 70-PR-22-10891

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for appellant Scott County)

Mallory K. Stoll, Blahnik, Prchal & Stoll, PLLC, Prior Lake, Minnesota (for respondent Jaspers, Moriarty & Wetherille, P.A.)

Considered and decided by Ross, Presiding Judge; Schmidt, Judge; and Cleary, Judge.

## SYLLABUS

Minnesota Statutes chapter 253B (2022) requires a county to pay the attorney fees for court-appointed civil-commitment representation in "proceedings under this chapter." Because a petition for a writ of mandamus or habeas corpus is not a civil-commitment proceeding under the chapter, chapter 253B does not authorize a district court to order a county to pay attorney fees generated in a separate mandamus or habeas corpus proceeding.

---

∗ Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

**ROSS**, Judge

The district court appointed a law firm to represent Anthony Swope in his civil-commitment proceeding. Scott County did not transfer Swope from jail to a treatment facility within 48 hours as Swope had alleged the county was required by statute to do. The firm began a separate action on Swope's behalf, petitioning the district court for writs of mandamus and habeas corpus to force the county to transfer Swope to a treatment facility. The firm billed the county for its work on the commitment proceedings and on the mandamus and habeas corpus action, but the county refused to pay either. The district court ordered the county to pay the firm for all its work on Swope's behalf based on the statute and a contract between the parties. In this appeal by the county, we affirm in part because the statute allowing payment to court-appointed attorneys requires the county to pay the firm for its work on Swope's civil-commitment proceeding. But because the statute requires payment only for the work performed in a "proceeding under" the Minnesota Commitment and Treatment Act, the district court improperly ordered the county to pay for the firm's work performed in the mandamus and habeas corpus proceedings. We therefore reverse in part, remanding to the district court to determine the amount the county owes the firm for its work performed in the commitment proceeding under the statute and the parties' contract.

## FACTS

Anthony Swope in June 2022 experienced a mental-health crisis and assaulted staff members at a hospital. The district court found Swope incompetent to stand trial for

criminal charges and appellant Scott County petitioned for judicial commitment. The district court appointed respondent law firm, Jaspers, Moriarty & Wetherille P.A. (JMW), to represent Swope during the civil-commitment proceeding. The district court ordered Swope's commitment, and Swope was taken to Scott County jail on September 14, 2022.

Swope remained in jail on October 13, 2022, so JMW petitioned the district court for writs of mandamus and habeas corpus, contending that Scott County had violated Minnesota Statutes section 253B.10, subdivision 1(b) (2022), which, Swope argued, requires that a civilly committed person be placed in a state-operated treatment program within 48 hours of commitment. JMW filed the petition in Swope's civil-commitment file, but the commissioner of human services and Scott County objected, arguing that the mandamus and habeas issues are separate actions that could not be raised in a civil-commitment proceeding. JMW withdrew the petition. It filed a new petition in a separate court file, seeking writs of mandamus and habeas corpus on the same basis. The record does not indicate whether the district court ruled on the petition, but Swope was transferred to a treatment program on November 16, 2022.

JMW filed a motion in the court file covering the commitment proceeding asking the district court to order the county to pay the attorney fees for its representation of Swope in both the civil-commitment proceeding and the mandamus and habeas corpus proceeding. The county opposed the motion, emphasizing that the mandamus and habeas corpus petition was collateral to Swope's civil commitment as a separate proceeding. Based on that distinction, it argued that the mandamus and habeas corpus proceeding was not a proceeding under the Minnesota Commitment and Treatment Act, Minnesota Statutes

sections 253B.001–.24 (2022), and that the county was therefore not obligated to pay those fees. The district court concluded otherwise, ordering the county to pay JMW for all its work on Swope's behalf based both on the statute governing court-appointed attorneys in civil-commitment proceedings and on the county's representation contract with JMW.

Scott County refused to pay and instead filed this appeal.

## ISSUES

I.      Did the district court err by ordering Scott County to pay JMW the attorney fees it generated in Swope's mandamus and habeas corpus proceeding?

II.     Did the district court abuse its discretion in approving the amount of fees to be paid to JMW for Swope's commitment proceeding?

## ANALYSIS

Scott County argues that the district court erroneously ordered it to pay JMW's legal fees for representing Swope in the mandamus and habeas action. The county also argues that the district court abused its discretion in calculating the amount of fees due. We address each argument in turn.

## I

We first consider the county's argument that the district court erroneously ordered it to pay JMW's legal fees for representing Swope in the mandamus and habeas action. No statute directly obligates a county to pay the legal fees a party incurs when seeking relief in a mandamus action or an action for habeas corpus. The district court ordered the county to pay JMW's legal fees in full for all its work on Swope's behalf based on the statute authorizing court appointment of legal counsel in civil-commitment proceedings:

4

A patient has the right to be represented by counsel at *any proceeding under this chapter*. The court shall appoint a qualified attorney to represent the proposed patient if neither the proposed patient nor others provide counsel. The attorney shall be appointed at the time a petition for commitment is filed or when simultaneous competency and civil commitment examinations are ordered under subdivision 2a, whichever is sooner. In *all proceedings under this chapter*, the attorney shall:

(1) consult with the person prior to any hearing;

(2) be given adequate time and access to records to prepare for all hearings;

(3) continue to represent the person throughout *any proceedings under this chapter* unless released as counsel by the court; and

(4) be a vigorous advocate on behalf of the person.

Minn. Stat. § 253B.07, subd. 2c (emphasis added). The payment provision of the same chapter states, "In *each proceeding under this chapter* the court shall allow and order paid . . . to the patient's counsel, when appointed by the court, a reasonable sum for travel and for the time spent in court or in preparing for the hearing." Minn. Stat. § 253B.23, subd. 1(a) (emphasis added). Given this statutory authorization specifically for appointment of counsel to represent a patient in a "proceeding under this chapter" and its authorization for legal fees generated "[i]n each proceeding under this chapter" (and the district court's reliance on section 253B.23, subdivision 1(a), to order the county to pay for all the work JMW performed on Swope's behalf), we must decide what the phrase "proceeding under this chapter" means. We review *de novo* a district court's interpretation of a statute.

5

*Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016). Our *de novo* review requires us to reverse.

The issue before us is whether a separate mandamus and habeas corpus action, filed as an action separate from the civil-commitment process, is a "proceeding" identified in chapter 253B such that the district court could order Scott County to pay for JMW's fees. Based on our interpretation of the statute and guided by prior caselaw, we hold that a mandamus and habeas corpus action is not a "proceeding under [this civil-commitment] chapter."

We have no difficulty determining what is meant by "this chapter" in the repeated phrases in the statutory provisions. The legislature introduces chapter 253B with the answer: "This chapter may be cited as the 'Minnesota Commitment and Treatment Act.'" Minn. Stat. § 253B.01. And the Minnesota Commitment and Treatment Act, which we will refer to here simply as "the treatment act," is contained entirely in chapter 253B. We have already clarified that a "proceeding under" the treatment act is one that is "specifically mentioned" in the statute. *In re Civ. Commitment of Moen*, 837 N.W.2d 40, 50–51 (Minn. App. 2013), *rev. denied* (Minn. Oct. 15, 2013). And the treatment act specifically mentions assorted proceedings, including a prehearing examination (§ 253B.07, subds. 4, 5), a preliminary hearing (§ 253B.07, subd. 7), a commitment hearing (§ 253B.08, subds. 1, 3), a treatment-review hearing (§ 253B.12, subds. 1, 2a), judicial review of and a hearing on an intended revocation of a provisional discharge (§ 253B.15, subds. 3b, 3c), a hearing on a petition for release from commitment (§ 253B.17, subds. 1, 2), a hearing before a special review board (§ 253B.18, subd. 4c), and appeals of a special-review-board decision

(§ 253B.18, subd. 13). These are "proceedings under" the treatment act and require the appropriate county authority both to appoint counsel and to pay counsel the attorney fees generated to work on them. Because the county appointed JMW to represent Swope in his civil-commitment proceeding pursuant to chapter 253B, including preparing for and appearing at the commitment hearing—a proceeding under the treatment act—the district court properly required Scott County to pay JMW's attorney fees for its civil-commitment-proceeding work on Swope's behalf.

By contrast, a proceeding resolving a dispute over a patient's right to treatment is not a proceeding specifically mentioned in the treatment act, and it is therefore not a proceeding "under" the act. This plain-reading conclusion finds support in *In re Civil Commitment of Navratil*, 799 N.W.2d 643, 651 (Minn. App. 2011), *rev. denied* (Minn. June 13, 2011). In *Navratil*, we held that even though a civilly committed individual has the right to be treated, the civil-commitment process of the treatment act "is not the proper avenue for asserting a right-to-treatment argument." 799 N.W.2d at 650–51. We recognized other avenues outside of the commitment process to assert the right to treatment, including a petition for habeas corpus. *Id.* at 651. Similarly, in *Moen*, we held that a motion brought under Minnesota Rule of Civil Procedure 60.02(e) for relief from a prior judgment is not a proceeding under the treatment act because it is not mentioned in the act. 837 N.W.2d at 51. These holdings buttress our reading of the statute and lead us to hold that the statute does not require a county that appointed counsel to represent a patient in civil-commitment proceedings to pay counsel for collateral work undertaken on the

patient's behalf, like attempting to vindicate the patient's right to treatment through a mandamus or habeas corpus proceeding.

We are not persuaded to a different conclusion by the treatment act's reference to a habeas corpus proceeding. While the treatment act does refer to a right to petition for a writ of habeas corpus, it does not identify a habeas corpus action as a proceeding under the act. One provision states simply, "Nothing in this chapter shall be construed to abridge the right of any person to the writ of habeas corpus." Minn. Stat. § 253B.23, subd. 5. Unlike the proceedings mentioned in chapter 253B, which we have listed above and whose processes are detailed and expounded upon in the chapter, habeas corpus is referenced only as a preexisting right independent of the chapter, not as a proceeding of any kind, let alone a proceeding under the chapter. *See, e.g.*, *id.*, subd. 7 (detailing the steps for an appeal by the commissioner or any other aggrieved party from any order entered under the chapter). The chapter does not provide a mechanism to fold a habeas proceeding into any of the proceedings mentioned in the chapter. The habeas reference therefore does not change our mind.

The parties have argued that our opinions might be construed as somewhat conflicting. We clarify our prior caselaw to the extent any discrepancy appears between our holdings in *Hefler* and *Navratil* or *Travis*. As we held in *Navratil* and discussed in *Travis*, a patient's right to treatment cannot be enforced in a civil-commitment proceeding and must instead be enforced through a separate action, offering in dicta that filing a habeas corpus petition and appearing before the special review board are avenues for right-to-treatment relief. 799 N.W.2d at 651; *In re Civ. Commitment of Travis*, 767 N.W.2d 52, 58–

59 (Minn. App. 2009). In *Moen*, we reiterated our *Hefler* holding that a committed person has a statutory right to counsel for a hearing before the special review board. 837 N.W.2d at 50–51 (citing *In re Hefler*, 378 N.W.2d 808, 811–12 (Minn. App. 1985)); *see also* Minn. Stat. § 253B.18, subd. 4c. Our decision today that a mandamus and habeas corpus petition is not a proceeding under the act conforms with our holding in *Moen* because, while a hearing before a special review board is listed in the act as a proceeding, a mandamus and habeas action is not.

JMW offers various policy arguments against our holding today. It emphasizes that the treatment act guarantees a person subject to civil commitment the right to counsel at all stages of civil-commitment proceedings. JMW reminds us of its ethical obligation to Swope to vindicate his right to treatment conferred by the commitment act. And it contends that, because no specifically outlined proceeding in the treatment act provides a mechanism to vindicate that right, the appointed attorney's work still ought to be a covered fee. Should we expect attorneys to accept a court-appointed role to represent civil-commitment patients when some of the work will be unfunded? JMW argues reasonably, "Without counsel, other persons like Mr. Swope will be forced to languish in jail or prison awaiting treatment while their mental health continues to deteriorate and their condition worsens. This Court should be deeply troubled by such worrying implications for one of our State's most vulnerable populations."

JMW's policy arguments are well founded and raise genuine practical concerns. But it is not our prerogative to add language to a statute to advance what might appear to be sound policy—including policy that the legislature perhaps only inadvertently failed to

account for. This deferential, separation-of-powers approach is grounded in the long-standing admonition restraining us from adding words when construing a statute, even words that the legislature may have unconsciously omitted. *Martinco v. Hastings*, 122 N.W.2d 631, 638 (Minn. 1963) ("[C]ourts cannot supply that which the legislature purposely omits or inadvertently overlooks."). Although the treatment act has been amended after the circumstances involved in this case, the amendment does not directly expand the scope of coverable legal services. The amended statute now includes a subdivision stating, "Patients . . . must be admitted to a state-operated treatment program within 48 hours of the Office of Medical Director, under section 246.018, or a designee determining that a medically appropriate bed is available," and it provides that the new language "expires on June 30, 2025." Minn. Stat. § 253B.10, subd. 1(e) (Supp. 2023). The amendment therefore relieves the attorney-fee controversy by allowing civilly committed individuals to remain in jails with no apparent statutory right to immediate treatment, not by addressing the over-capacity issues the parties say led to Swope's extended jail stay.

We also cannot affirm the district court's order based on the parties' contract. Although the district court stated in its 26th and final conclusion of law that "Scott County has an obligation to pay JMW's fees pursuant to Chapter 253B and its contract," all 25 of its other legal conclusions addressed only the obligation based on Chapter 253B with no mention of the contract. Its order includes no legal authority or rationale expounding on why the contract requires the county to pay fees on the collateral proceeding. We would have to speculate to conclude that the district court deemed the contract ambiguous and therefore relied on extrinsic evidence to reach a course-of-performance-and-dealing

10

interpretation of the parties' agreement. *See Leslie v. Minneapolis Tchrs. Ret. Fund Ass'n*, 16 N.W.2d 313, 315–16 (Minn. 1944) (holding that if the language of a contract is ambiguous, a court may resort to evaluating extrinsic evidence, including the parties' acts in performance of the contract, to determine its meaning). But even if we were to so speculate, the district court never addressed the county's emphasis that, because the parties renegotiated and contracted in 2018, the alleged past practices based on prior contracts would have limited relevance in interpreting the contract in force when JMW handled Swope's case. In any event, to the extent the order rests on a contract theory, the district court abused its discretion by failing to include the factual and legal justification to order the county to pay for work beyond any proceedings under the treatment act.

## II

Scott County argues that the district court abused its discretion by finding the fees charged for multiple JMW attorneys working on Swope's civil-commitment action to be reasonable, because the district court had only appointed one attorney to the matter and because it approved fees that Scott County argued were unrelated to the proceeding. And the parties argue over whether the district court's failure to use a lodestar method to calculate the reasonableness of the attorney fees was an abuse of discretion. We review a district court's award of attorney fees for an abuse of discretion and its factual findings for clear error. *County of Dakota v. Cameron*, 839 N.W.2d 700, 711 (Minn. 2013). The district court determined the fee award based on JMW's submitted invoice, which did not distinguish between JMW's work on the civil-commitment proceeding and its work on the petition for mandamus and habeas corpus. We are in no position to opine as to the

11

reasonableness of the fee award or reach the question of methodology both because the district court's fee award included the work outside the scope of the commitment proceeding and because the invoice does not delineate the proceedings for which JMW performed its work. On remand, the district court is free to reopen the record for evidence and argument on the issue of the amount of recoverable fees.

## DECISION

We affirm the district court's order for Scott County to pay JMW for the attorney fees incurred while representing Swope during his civil-commitment proceeding. We reverse the district court's decision, which it based on chapter 253B, obligating the county to pay JMW's fees incurred while representing Swope in the separate mandamus and habeas corpus proceeding. We also reverse the district court's decision to order the county to pay those fees to the extent it based the decision on the parties' contract. We remand for the district court to determine the reasonable attorney fees that JMW incurred while representing Swope in the civil-commitment proceeding. On remand the district court also should properly analyze the legal issues arising from the parties' arguments over whether their contract requires the county to pay the disputed fees.

**Affirmed in part, reversed in part, and remanded.**

**CLEARY,** Judge (concurring specially)

While I concur with the majority opinion based on the current statutory framework, I write separately to urge the legislature to follow through and give meaning to the mandates provided in Minn. Stat. § 253B.10 (2022) by addressing the need to provide for payment of fees incurred in enforcing those mandates, including the right to treatment.

These statutory provisions address some of the most vulnerable among us—the seriously mentally-ill who have been civilly committed. Many have been left to languish in local law enforcement holding facilities while they are denied the treatment that they so desperately need, the provision of which is mandatory under Minn. Stat. § 253B.10, subd. 1(b). How is the right to treatment to be vindicated without the assistance of counsel? Was the failure to provide payment of fees in such situations possibly inadvertent, as the majority speculates? Or was it intentional, mandating treatment without a realistic way of enforcing that right? Either way, now is the time to rectify this situation and give meaning to the mandate. Again, I urge the legislature to act on this inequity and follow through, addressing our collective responsibility to not look away.